IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 22-261 (MFK) |
| NANOSTRING TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |
| NANOSTRING TECHNOLOGIES, INC., | ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| 10X GENOMICS, INC., | ) ) | |
| Counterclaim-Defendant. | ) | |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO SEVER CLAIMS RELATING TO NANOSTRING'S 689 PATENT AND CONSOLIDATE THEM WITH CASE NO. 22-1375-MFK FOR A SEPARATE TRIAL**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff 10x Genomics, Inc.*

November 23, 2022

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch ((#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
 (302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff President and Fellows of Harvard College*

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

III.    SUMMARY OF THE ARGUMENT ................................................................. 4

IV.     STATEMENT OF FACTS ................................................................................. 5

        A.      10x and Harvard's Church Patents ........................................................ 5

        B.      NanoString's Beechem Patents ............................................................. 8

V.      ARGUMENT ..................................................................................................... 10

        A.      Legal Standards...................................................................................... 10

        B.      The Respective Claims Do Not Arise out of the Same Transaction,
                Occurrence, or Series of Transactions or Occurrences ....................... 11

        C.      On Questions of Fact and Law, the Respective Claims Are More Disparate
                than Overlapping.................................................................................... 12

        D.      Avoidance of Prejudice and Delay, Ensuring Judicial Economy, and
                Safeguarding Principles of Fundamental Fairness Support Severance............... 14

                1.      Avoiding Prejudice and Delay ................................................... 14

                2.      Ensuring Judicial Economy ....................................................... 17

                3.      Safeguarding Principles of Fundamental Fairness.................... 19

VI.     CONCLUSION.................................................................................................. 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Analog Devices, Inc. v. Xilinx, Inc.*,
   No. 19-2225-RGA (D. Del. Feb. 7, 2020), D.I. 26 ................................................. 15

*Ciena Corp. v. Corvis Corp.*,
   210 F.R.D. 519 (D. Del. Oct. 22, 2002) ................................................................ 18

*Cirba Inc. v. VMWare, Inc.*,
   No. 19-742-LPS (Sept. 19, 2019) ..................................................................... 12, 13

*Comcast IP Holdings I v. Sprint Comms. Co.*,
   No. 12-205-RGA (D. Del.), (July 19, 2012) ....................................................... 13, 15

*CVI/Beta Ventrues v. Custom Optical Frames*,
   896 F. Supp. 505 (D. Md. 1995) .......................................................................... 16

*Gregory v. FedEx Ground Package Sys.*,
   No. 10-cv-630, 2012 2012 WL 23966861 (E.D. Va. May 9, 2012) ........................... 18

*Grigsby v. Kane*,
   250 F. Supp. 2d 453 (M.D. Pa. 2003) ................................................................... 10

*Harris Corp. v. Huawei Device US, Inc.*,
   No. 18-cv-439-JRG, 2019 WL 8135570 (E.D. Tex. Jun. 12, 2019) .......................... 13, 16

*In Re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ...................................................................... 10, 11

*Karlo v. Pittsburgh Glass Works*,
   No. 10-cv-1283, 2015 WL 6134052 (W.D. Pa. Oct. 16, 2015) .............................. 10, 11

*LG Electronics, Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*,
   No. 12-1063-LPS (July 22, 2015) ..................................................................... 12, 18

*Pentair Water Pool & Spa, Inc. v. Hayward Indus.*,
   No. 11-cv-459-F, 2012 U.S. Dist. LEXIS 10572 (E.D.N.C. Jan. 30, 2012) ................ 16

*Pharmacyclis v. Acerta Pharma*,
   No. 17-1582-RGA (D. Del. Oct. 3, 2018), D.I. 73 .................................................. 19

*Rodin Properties-Shore Mall v. Cushman & Wakefield, Inc.*,
   49 F. Supp. 2d 709 (D. N.J. 1999) ...................................................................... 18

*Siemens Indus., Inc. v. Westinghouse Air Brake Technologies Corp.,*
   No. 16-284-LPS-CJB (Aug. 17, 2017) ............................................................................. passim

*Sonos Inc. v. D&M Holdings, Inc.,*
   No. 14-1330-RGA (D. Del. Mar. 4, 2016), D.I. 100 ................................................................ 16

*Viatech Techs., Inc. v. Microsoft Corp.,*
   No. 14-cv-1226-RGA (D. Del. Jun. 6, 2016), D.I. 134 ..................................................... 13, 15

*Walsh v. Miehle-Goss-Dexter, Inc.,*
   378 F.2d 409 (3d Cir. 1967) ........................................................................................... 10

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.,*
   No. 17-1687-LPS-CJB, 30 F.R.D. 143 (D. Del. 2019)............................................... 10, 11, 17

## I.     INTRODUCTION

NanoString has informed 10x and Harvard of its plan to move to consolidate its recently filed 142 Patent claims against 10x (No. 22-cv-1375-MFK) with its 689 Patent counterclaims against 10x in this case. Plaintiffs agree with NanoString that its 142 and 689 Patents ("Beechem Patents") should be litigated and tried together. The Beechem Patents are in the same patent family, have a common specification, have the same inventors, will have overlapping claim construction issues, are asserted against the same 10x products (Visium platform), are expected to have the same alleged embodying NanoString products (GeoMx platform), will face overlapping prior art, and will have similar infringement and validity issues. Nor do Plaintiffs object to litigating NanoString's new 142 Patent claims on the schedule that the parties have already agreed to in the 261 Case through pre-trial. The question for the Court is whether NanoString's complex patent case on the Beechem Patents should be combined with the 261 Case—a different complex patent case that involves five 10x and Harvard patents (the "Church Patents") asserted against Nanostring involving different Nanostring technology, numerous different inventors, different claim construction issues, different 10x products (Xenium platform), different NanoString products (CosMx platform), different prior art (both because the technology is different and because the priority dates are more than six years apart), and different infringement and validity issues. To best serve judicial efficiency and avoid the substantial and prejudicial jury confusion that would result from litigating such disparate claims in a single trial, the answer is no. Plaintiffs propose separating NanoString's Beechem Patents and 10x and Harvard's Church Patents so that they can proceed along parallel tracks.

Separating the two sets of disparate patents and products into parallel cases for clarity avoids delay of either case. Plaintiffs do not object to keeping the 1375 and 261 Cases on the same schedule through discovery with robust cross-use of documents and depositions. And

separating the two cases will decrease pressures for delays in both cases for several reasons. First, the 261 Case involves a party (Harvard) that is not involved in NanoString's new 1375 Case. Coordination in the 261 Case is already proving challenging, with Harvard as an extra party and necessary coordination with the Vizgen 595 Case. Discovery can proceed more efficiently in each of the 261 and 1375 Cases because Harvard has no reason to be involved in fact or expert discovery, claim construction, pre-trial preparation, or trial relating to the Beechem Patents. It is one fewer party (and two fewer sets of counsel) to attend meet-and-confers and sign off on joint filings and possibly hearings. Second, separating the two cases has the additional benefit of allowing 10x, Harvard, and NanoString to proceed to final judgement and/or appeal on their respective affirmative claims without having to wait for unrelated issues to be resolved.

For these reasons, 10x and Harvard respectfully ask the Court to (a) sever the 689 Patent from the 261 Case and consolidate it with the 1375 Case and (b) instruct the parties to submit a scheduling order in the 1375 Case that aligns with the 261 Case for pre-trial deadlines and with a separate trial in the 1375 Case.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

**The 261 Case.**[1] In the 261 Case, 10x and Harvard accuse NanoString's CosMx *in situ* imaging platform of infringing five patents owned by Harvard and exclusively licensed by 10x. These patents came out of Professor George Church's lab at the Wyss Institute at Harvard. (261 Case, D.I. 17). 10x's *in* situ imaging platform, Xenium, will soon launch in the United States, and is expected to embody claims of the asserted Church Patents. The operative scheduling order

---

[1] *10x Genomics, Inc. & President and Fellows of Harvard Coll. v. NanoString Techs., Inc*., No. 22-cv-261-MFK.

was entered September 19, 2022, and discovery is just beginning.[2] Infringement contentions are due November 23, 2022. Initial invalidity contentions are due December 23, 2022.

On August 2, 2022, NanoString sought leave to add counterclaims of infringement of NanoString's 689 Patent by 10x's Visium Spatial Gene Expression platform. (261 Case, D.I. 38). Importantly, 10x agreed to not oppose because NanoString expressly stipulated that "the question of whether NanoString's '689 Patent counterclaims are heard in the same trial as 10x's claims will be reserved" for later. (261 Case, D.I. 38). NanoString is expected to assert that its GeoMx spatial profiling platform embodies certain claims of the 689 Patent.

| Cases and Parties | Patents / Technology | NanoString Products | 10x Products |
|---|---|---|---|
| 22-261-MFK<br><br>10x and Harvard claims against NanoString | Five Church Patents cyclic *in situ* detection | CosMx platform | Xenium platform |
| 22-261-MFK<br><br>NanoString counterclaim against 10x | 689 Patent (Beechem) spatial profiling | GeoMx platform | Visium platform |
| 22-1375-MFK<br><br>NanoString claim against 10x | 142 Patent (Beechem) spatial profiling | | |

**The 1375 Case.** On October 20, 2022, NanoString filed a new Complaint in *NanoString Technologies, Inc. v. 10x Genomics, Inc.*, No. 22-cv-1375-MFK. (1375 Case, D.I. 1). In the 1375 Case, NanoString accuses 10x's Visium Spatial Gene Expression platform of infringing

---

[2] The Church Patent family is also asserted in *10x Genomics & President and Fellows of Harvard College v. Vizgen Inc.*, No. 22-595-MFK (the "Vizgen 595 Case"). NanoString is not a party to the 595 Case, but the 261 Case schedule was delayed to accommodate alignment with the 595 Case given the overlapping technology, overlapping Church patents, overlapping inventors, and overlapping 10x embodying products.

NanoString's 142 Patent. NanoString's 689 Patent and its 142 Patent share the same parent application, with Joe Beechem as the first named inventor. NanoString is expected to assert that its GeoMx spatial profiling platform embodies claims of the 142 Patent.

In summary, the Beechem Patents are presently split across two cases, with Harvard a party only to claims relating to the Church Patents.

## III.   SUMMARY OF THE ARGUMENT

1.     NanoString's 689 and 142 Patents—the asserted Beechem Patents—that are presently asserted in two different actions should be litigated and tried together. NanoString accuses Visium, 10x's spatial profiling platform, of infringing both. NanoString's GeoMx spatial profiling platform allegedly embodies both Beechem Patents. The Beechem Patents share a specification and parent application and will have overlapping claim construction issues. The prior art is expected to overlap significantly for the Beechem Patents.

2.     The Harvard/10x Church Patents asserted in the 261 Case should be tried separately from the Beechem Patents. The Church Patents and Beechem Patents are directed at different technologies: spatial profiling technology in the Beechem Patents, *in situ* imaging technology in the Church Patents. The Beechem Patents implicate 10x's Visium and NanoString's GeoMx platforms; the Church Patents cover 10x's Xenium and NanoString's CosMx platforms. The claim construction issues among the Church and Beechem Patents will be different. The prior art to the Church Patents will be different than the prior art to the Beechem Patents, with more than six years between the earliest priority dates. Consistent with Delaware practice, such disparate cases should be tried to different juries as a matter of logic and avoidance of jury confusion.

3.     Any scheduling and discovery efficiencies that may result from consolidating the 261 and 1375 Cases into a single action will be at least matched by trying both Beechem Patents

4

in the 1375 Case. Discovery is just beginning in the 261 Case and, given the issues that unite the Beechem Patent asserted in the 261 Case and the Beechem Patent asserted in the 1375 Case, the parties can quickly align the schedule of the 1375 Case with the schedule of the 261 Case.

4.      Given the non-overlapping legal and factual issues between 10x's assertion of the Church Patents and NanoString's assertion of the Beechem Patents, using the 1375 Case as the vehicle for the Beechem Patents will be efficient for discovery and trial preparation and will allow each case to proceed to final judgement and/or appeal without the prejudice of waiting on the resolution of unrelated issues.

## IV.      STATEMENT OF FACTS

### A.      10x and Harvard's Church Patents

10x Genomics is a ground-breaking life sciences technology company founded in 2012 in Pleasanton, California. It is a worldwide leader in genomics, the comprehensive study of biological systems at a molecular and cellular level, with an expanding suite of widely acclaimed products and more than 4000 scientific articles published based on data generated from those products. 10x has invested hundreds of thousands of hours and more than $1 billion in research and development to invent, design, and develop its proprietary line of products for understanding biology at unprecedented resolution and scale. 10x continues to invest significant resources to further innovate and to bring novel products and capabilities to market.

As part of those on-going investments, in 2020, 10x acquired ReadCoor, Inc., a Harvard start-up founded on Professor George Church's work at the Wyss Institute, thereby acquiring intellectual property, key technology advances, and deep talent and expertise in the emerging *in situ* field. 10x's soon-to-be-released Xenium In Situ platform is built on those investments. 10x's exclusive license from Harvard of the Church family of patents provides Xenium valuable intellectual property support and protection.

In the 261 Case, 10x and Harvard accuse NanoString's CosMx *in situ* imaging platform—first available commercially in November 2021 as a service offered by NanoString—of infringing five patents from the Church family, U.S. Patent Nos. 10,277,639; 11,021,737; 11,293,051; 11,293,052; and 11,293,054 ("Church Patents"), each entitled "Compositions and Methods for Analyte Detection." The Church Patents are directed at methods for detecting analytes in a biological sample through cyclic *in situ* detection of signal signatures. For example, Claim 26 of the 052 Patent provides steps for a method of analysis of cells or tissue sample comprising cyclically obtaining signal signatures using detectable labels (e.g., decoder probes with fluorophores) that are associated through detection reagent with target analytes. *See, e.g.*, **Ex. 1** [052 Patent], Claim 26 (nucleic acid target). NanoString illustrates the CosMx probe chemistry for an RNA target as follows:



*See* https://www.biorxiv.org/content/10.1101/2021.11.03.467020v3.full.pdf at Fig. 1A (annotations added). NanoString's CosMx workflow involves cycling on and off sets of decoder probes with fluorescent detectable labels to obtain signal signatures that are used to identify the target at its location in the tissue, a workflow illustrated in NanoString's public literature:

6



*See* https://www.biorxiv.org/content/10.1101/2021.11.03.467020v3.full.pdf at Figure S1.

10x's soon-to-be-launched Xenium platform will commercialize the Church Patents under Harvard's license to 10x by enabling methods for detecting analytes in a biological sample through cyclic *in situ* detection of signal signatures, as illustrated in 10x's public literature:



*See* https://www.10xgenomics.com/in-situ-technology.

The earliest application in the Church Patents priority chain is Provisional Application No. 61/579,261, filed on December 22, 2011.

None of the five asserted Church Patents, the accused NanoString CosMx platform, or the 10x Xenium platform are at issue in NanoString's claims in the 1375 Case or infringement counterclaims in the 261 Case.

### B. NanoString's Beechem Patents

In NanoString's new 1375 Case and its patent counterclaim in the 261 Case, NanoString accuses 10x's Visium Spatial Gene Expression platform of infringing U.S. Patent Nos. 11,377,689 and 11,473,142 ("Beechem Patents"), each entitled "Chemical Compositions and Uses Thereof." *See* First Amended Answer ("FAA") (261 Case, D.I. 43), ¶ 144, Ex. 1; Complaint (1375 Case, D.I. 1), ¶ 22, Ex. 1.

The Beechem Patents each name six inventors, with Joseph Beechem as the first named inventor for each. *See* FAA (261 Case, D.I. 43), Ex. 1; Complaint (1375 Case, D.I. 1), Ex. 1. NanoString describes the Beechem Patents as directed to a "way of spatially detecting target analytes in regions of interest." FAA (261 Case, D.I. 43), ¶ 11. For example, Claim 1 of the 689 Patent recites "a method for spatially detecting at least one target analyte" in two user-defined locations in a tissue sample through sequencing nucleic acid extension products of probes released and collected from those locations on the tissue. FAA (261 Case, D.I. 43), Ex. 1 at Claim 1. In the GeoMx workflow, users define regions of interest on a tissue section and then collect photo-cleaved oligos from those regions for downstream counting and sequencing, as NanoString shows on its website:



**Ex. 2** [GeoMx Digital Spatial Profiler, GeoMx DSP Overview; 10XN653-00020026-32] at p. 4.

NanoString accuses 10x of infringing the Beechem Patents through its Visium platform, a 10x-designed platform based on an earlier product developed by Spatial Transcriptomics, now a 10x subsidiary, that implemented a protocol published in the founders' 2016 academic paper, Stahl, P.L., *et al.*, "Visualization and analysis of gene expression in tissue sections by spatial transcriptomics," *Science* 353, 78-82 (2016). In both the prior-art ST workflow and the Visium workflow, a tissue section is placed over a capture area comprising a uniform array of spots comprising probes with spatial barcodes:



*See* "Inside Visium Spatial capture technology, (**https://pages.10xgenomics.com/rs/446-PBO-**

9

704/images/10x_BR060_Inside_Visium_Spatial_Technology.pdf).         Barcode      information

becomes associated with target genes from the tissue section and is used in downstream

sequencing.

The earliest filing date in the Beechem Patent family priority chain is the filing of

Provisional Application No. 62/629,180 on February 12, 2018.

## V.    ARGUMENT

### A.    Legal Standards

Rule 21 of the Federal Rules of Civil Procedure authorizes a court to "sever any claim

against a party." Severance is appropriate where one claim is "capable of resolution despite the

outcome of the other claim." *Karlo v. Pittsburgh Glass Works*, No. 10-cv-1283, 2015 WL

6134052, at *3 (W.D. Pa. Oct. 16, 2015). It is well-settled that severance "is addressed to the

sound discretion of the trial court." *Walsh v. Miehle-Goss-Dexter, Inc.*, 378 F.2d 409, 412 (3d

Cir. 1967); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (district courts have

"virtually unfettered discretion in determining whether or not severance is appropriate").

Following guidance from the Federal Circuit, district courts seeking to sever claims may

"look[] to Rule 20 for guidance." *See In Re EMC Corp.*, 677 F.3d 1351, 1542 (Fed. Cir. 2012);

*Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 30 F.R.D. 143, 147 (D. Del.

2019). Under Rule 20, joinder of two defendants in one action requires both "(1) the claims

against them must be asserted with respect to or arising out of the same transaction, occurrence,

or series of transactions or occurrences, and (2) there must be a question of law or fact common

to all defendants." *Westinghouse*, 30 F.R.D. at 147. And even upon "meet[ing] both

requirements, joinder may still be refused 'in the interest of avoiding prejudice and delay,

ensuring judicial economy, or safeguarding principles of fundamental fairness." *Id.*, at 147-48

(quoting *EMC*, 677 F.3d at 1360) (internal quotation marks and citations omitted); *see also id.*, at 149-50 (addressing the same additional factors in the context of severance).

### B. The Respective Claims Do Not Arise out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences

NanoString's Beechem Patent claims against 10x do not arise out of the same transactions or occurrences as 10x's Church Patent claims against NanoString. The first Rule 20 factor—whether the two sets of claims arise out of the same transaction, occurrence, or series of transactions or occurrences—weighs in favor of severing of NanoString's 689 Patent and consolidating it with NanoString's 142 Patent in the 1375 Case. The products at issue in the Beechem Patent claims (10x's Visium and NanoString's GeoMx) do not overlap with the products at issue in the Church Patent claims (10x's Xenium and NanoString's CosMx). The earliest priority dates for the two sets of patents are more than six years apart and implicate substantively distinct prior art issues. A determination of validity and infringement of the Church Patents can be made without having to resolve anything in relation to NanoString's Beechem Patent claims, and *vice versa*. 10x's Church Patent claims and NanoString's Beechem Patent claims are "discrete and separate" and each is "capable of resolution despite the outcome of the other claim." *Karlo*, 2015 WL 6134052, at *3.

Delaware courts have severed patent claims and patent counterclaims from each other upon finding that they do not arise out of the same transaction or occurrence. *See* **Ex. 3**, Trans. of Record at 32:12-19, *Siemens Indus., Inc. v. Westinghouse Air Brake Techs. Corp.,* No. 16-284-LPS-CJB (Aug. 17, 2017) (severing patent counterclaims upon finding, *inter alia*, that Siemens patent claims and Wabtec's patent counterclaims "assert[] infringement of ***different patents by different products*** … and so they don't arise out of the same transaction or occurrence") (emphasis added); **Ex. 4**, Trans. of Record at 20:23-21:8, *LG Elecs., Inc. v. Toshiba Samsung*

*Storage Tech. Korea Corp.*, No. 12-1063-LPS (July 22, 2015), (severing TSST's four permissive patent counterclaims that involved the same parties and same "broad general level of the technology"); **Ex. 5**, Trans. of Record at 13:9-10, *Cirba Inc. v. VMWare, Inc.*, No. 19-742-LPS (Sept. 19, 2019) (finding, *inter alia*, that the "claims here do not arise out of the same transaction or occurrence" and severing VMWare's patent infringement counterclaims involving ***different inventors and different products and where the two sets of validity and infringement issues could be decided separately***) (emphasis added). The Court here should likewise sever NanoString's counterclaim from the 261 Case because it arose out of different transactions and occurrences than 10x's claims.

###      C.     On Questions of Fact and Law, the Respective Claims Are More Disparate than Overlapping

The discrete, non-overlapping questions of fact and law between 10x's Church Patent claims and NanoString's Beechem Patent claims substantially outweigh any common questions of fact and law, again favoring severance NanoString's 689 Patent and its consolidation with NanoString's 142 Patent in the 1375 Case.

There is no commonality between the merits issues beyond the mere assertion of patent infringement. The accused (CosMx) and asserted embodying (Xenium) products for the Church claims are different than the accused (Visium) and asserted embodying (GeoMx) products for the Beechem claims, making the infringement inquiry discrete and separate across the two cases. The patents address different technologies with priority dates more than six years apart and no overlapping inventors, implicating different prior art and non-overlapping validity issues.

Courts routinely sever patent claims and counterclaims where there are insufficient overlapping questions of fact and law. *See* **Ex. 3**, *Siemens* Trans. at 32:20-33:25 (severing patent counterclaims upon finding insufficient common questions of fact and law). *In Siemens Industry*,

the patents were directed to the same technology area; defendants' patents cited plaintiff's asserted patents; plaintiff's patents may have been prior art to defendants' patents; and the accused and embodying products overlapped. *Id.* at 32:20-33:9. But the claims were severed because the two sets of patents had different inventors, prosecution histories, infringement arguments, prior art, and priority dates. *Id.* at 33:10-25.

10x's claims and NanoString's claims have less in common than the severed claims in *Siemens. See also* **Ex. 4**, *Viatech Techs., Inc. v. Microsoft Corp.*, No. 14-cv-1226-RGA (D. Del. Jun. 6, 2016), D.I. 134 at 1 (ordering separate trials for each side's single patents despite overlapping issues); **Ex. 5**, *Cirba* Trans. at 9:22-13:21 (noting that "[t]he ***accused products are different***" (13:14-15) and granting plaintiff's motion for severance); **Ex. 7**, Trans. of Record at 4:23-6:13, *Comcast IP Holdings I v. Sprint Commc'ns Co.*, No. 12-205-RGA (D. Del.), (July 19, 2012) (severing defendant's six patent counterclaims from plaintiff's six patent claims at the Rule 16 conference even though the technology of each involved the same communications networks, noting the high confusion from having all issues before one jury); *see also, e.g.*, *Harris Corp. v. Huawei Device US, Inc.*, No. 18-cv-439-JRG, 2019 WL 8135570, at *2 (E.D. Tex. Jun. 12, 2019) (severing defendant's counterclaims that "do not share similar technologies" with plaintiff's claims, "do not present common or overlapping questions of law or fact, thus necessitating different witnesses, experts, and documentary proof," and "adding the complexity of [defendant's patents] to the factual considerations that the fact-finder would already be tasked with … risks jury-confusion").

The Court here should likewise sever NanoString's 689 Patent and consolidate it with the 142 Patent because there are almost no overlapping questions of law or fact.

### D.   Avoidance of Prejudice and Delay, Ensuring Judicial Economy, and Safeguarding Principles of Fundamental Fairness Support Severance

Consolidating the Beechem Patent claims in the 1375 Case and aligning schedules but planning separate jury trials strikes the right balance of avoiding prejudice and delay, ensuring judicial economy, and safeguarding the principles of fundamental fairness.

#### 1.   Avoiding Prejudice and Delay

Plaintiffs first filed their Complaint in the 261 Case on February 28, 2022. Although Plaintiffs sought trial in February 2024 (261 Case, D.I. 25), the Court adopted NanoString's proposal for trial in June 2024 (261 Case, D.I. 30). Because Plaintiffs' later suit against Vizgen involved overlapping Church Patents, the 261 Case and 595 Case have now been aligned in their pre-trial schedules, and efforts have been made to coordinate discovery across the two cases involving the Church Patents and the three parties' *in situ* platforms.[3] (261 Case, D.I. 47). The 261 Case is now set for trial in June 17-26, 2024, with the Vizgen case set for trial in July 2024.

Consolidate NanoString's two Beechem Patents in the 1375 Case while aligning its schedule with that of the 261 Case avoids any prejudice that might come to NanoString from having its 689 Patent claims severed. NanoString's did not seek leave to add the 689 Patent counterclaims to the 261 Case until August 2022, six months after 10x and Harvard's original complaint. Trying NanoString's later-filed claims only shortly after trying Plaintiffs' earlier-filed claims would not create prejudice. Trial could be scheduled as early as August or September 2024 for the 1375 Case,[4] getting NanoString to trial in fewer months post-pleading than it will

---

[3] In addition to 10x's Xenium *in situ* imaging platform that will be at issue in the Vizgen 595 Case, Vizgen's accused MERSCOPE *in situ* imaging platform is accused. Vizgen's counterclaim against 10x in the 595 Case also implicates Xenium and MERSCOPE, and so Vizgen's patent counterclaim is different in kind than NanoString's counterclaim on the 689 Patent.

[4] The 595 Case is scheduled for trial July 15-24, 2024.

have taken for Plaintiffs' claims to reach trial. Severing the 689 Patent and consolidating it with the 1375 Case while coordinating schedules confers no prejudice or delay to NanoString.

Plaintiffs' non-opposition to NanoString's motion for leave to add the 689 Patent to the 261 Case was conditioned on raising the issue of separate trials at an appropriate time. (261 Case, D.I. 38). Now that there are two different multi-patent cases involving different products, it is sensible to position these cases for separate trials. Absent separate trials, jury confusion is highly likely. Severing counterclaims for a separate trial is necessary to avoid the prejudice to 10x and Harvard on their earlier-filed patent claims resulting from that jury confusion. *See, e.g.*, **Ex. 7**, *Comcast* Trans. at 5:5-9 ("My inclination is to treat these two as separate cases, because I'm quickly becoming convinced that ***you can't at the end of the day have a trial with one side saying here are my six patents and here's the other side saying here are my six patents***.") (emphasis added); *id.* at 6:11-13 ("I have a relatively strong feeling that the ***confusion outweighs the efficiencies***, just [as] a generic matter, and so in this case, too.") (emphasis added); **Ex. 6**, *Viatech Techs., Inc. v. Microsoft Corp.*, No. 14-cv-1226-RGA, D.I. 134:

> There is likely to be a substantial amount of overlap of the two sets of claims, as Defendant's patent is asserted as prior art to Plaintiff's patent. It seems likely, based on the letters, that Plaintiff will assert its accused product as a commercial success embodying its patent, so the accused product would appear in both trials. In the end, though, my judgment is that it would likely be better to schedule two trials rather than one. First, patent trials are difficult enough for juries without adding to the degree of difficulty. ***Trying both patents in one case would involve additional infringement analysis and damages analysis over a trial on just one patent. Extra testimony can lead to confusion***.

*Id*. at 1-2 (severing single patent claims for trial) (emphasis added); **Ex. 8,** *Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-2225-RGA (D. Del. Feb. 7, 2020), D.I. 26:

> And I have found, because I have had at least one case where both trials actually took place, you know, ***it made for a much cleaner case***. I don't think it actually took any significant extra amount of time over doing one trial with everything thrown in. I don't think it unfairly prejudiced anybody. I don't think having two different juries decide what are after all two different sets of questions, do they

infringe your patents and do you infringe their patents, is somehow unfair ….

> And you know, ***the jury service [in Delaware], in my belief, it's better to spread that out among the population***. There's a group of people now known as the gig economy who ***can't sit on a two-week jury trial***. Sometimes they can't sit on a one-week jury trial, either, but there are fewer people excluded if the service terms are shorter.

Feb. 7, 2020, Hrg. Trans. at 7:7-23 (separating patents for trial) (emphasis added). *See also*

**Ex. 9,** *Sonos Inc. v. D&M Holdings, Inc.*, No. 14-1330-RGA (D. Del. Mar. 4, 2016), D.I. 100

(*sua sponte* severing defendant's counterclaims for separate trial). In the *Siemens* case, Judge

Burke explained that it is easier for jurors to see each party's affirmative cases standing alone:

> For a jury that's already going to have some difficulty, some significant difficulty in dealing with all of these issues, it may ***be cleaner and easier for them to see one case with one plaintiff*** who is seeking their affirmative relief for infringement and then a separate case with a different plaintiff who is seeking its affirmative relief as opposed to mixing up those issues all in one huge case.

**Ex. 3**, *Siemens* Trans., at 36:21-37:3 (emphasis added). *See also, e.g., Harris Corp.*, 2019 WL

8135570, at *2 (severing defendant's counterclaims that "do not share similar technologies" with

plaintiff's claims, "do not present common or overlapping questions of law or fact, thus

necessitating different witnesses, experts, and documentary proof," when "adding the complexity

of [defendant's patents] to the factual considerations of the fact-finder would already be tasked

with … risks jury-confusion"); *Pentair Water Pool & Spa, Inc. v. Hayward Indus.*, No. 11-cv-

459-F, 2012 U.S. Dist. LEXIS 10572, at **5-6 (E.D.N.C. Jan. 30, 2012) (severing defendant's

patent counterclaims where the counterclaim technology was "unrelated" and consolidation

"would complicate the logistics for both the parties and the Court, [and] would present a high

risk of incurable jury confusion"); *CVI/Beta Ventures v. Custom Optical Frames,* 896 F. Supp.

505, 506-07 (D. Md. 1995) (severing patent counterclaim even though plaintiff's and defendant's

claims each related to "flexible eyeglass frames made from nickel titanium allows" and "that

related processes and certain common witnesses would be involved in the several inquiries"

because "the jury would need to consider separate eyeglass frames [accused products], separate patent claims and specifications, separate file histories, and separate affirmative defenses. Such commonality as may exist among the patents is far outweighed by the potential for jury confusion.").

Combining NanoString's Beechem Patent claims into a separate case with the same schedule eliminates prejudice to NanoString and separate trials eliminates prejudice to 10x from having combined complex and confusing trials on unrelated claims.

### 2.      Ensuring Judicial Economy

Severance facilitates judicial economy, which is one of the factors that Delaware courts consider when considering severance. *Westinghouse*, 30 F.R.D. at 147-8. The Court has sometimes considered this to be "the most significant factor." **Ex. 3**, *Siemens* Trans. at 34:1-5. Combining NanoString's Beechem Patent claims in the 1375 Case and aligning them with the 261 Case schedule but separating them for trial again strikes the right balance in ensuring judicial economy. Aligning the schedules has all the same benefits of coordination as would flow from consolidation, including aligning issues relating to fact and expert discovery disputes, claim construction, dispositive motions, and even pre-trial proceedings. And separating the patents will have the added benefit of not having to coordinate with Harvard on issues that only implicate the Beechem Patents, which are irrelevant to Harvard. Keeping 10x's affirmative claims and NanoString's affirmative claims formally separate will allow for more efficient trial, post-trial motions, and proceeding to final judgment. For example in *Siemens*, Judge Burke severed claims to keep an already large case from getting larger:

> Thirdly, whether the settlement of the claims or judicial economy would be facilitated by severance, to me, this is the most significant factor, and I think ***judicial economy, and as that related to the ability to try a case***, I think it's going to be facilitated by severance.

> ***The Siemens case on its own is already way too big and it's going to need to get smaller***, not bigger. …

*Id.* at 34:1-35:4 (emphasis added). Chief Judge Stark in *LG Electronics* likewise severed defendant's four patent counterclaims from plaintiff's four patent claims in part due to efficient management and concern for what trial would look like:

> I do hereby order severance. That is because I believe, as an exercise of my discretion, that it will be ***best for the overall efficient management of what will become two cases to treat them as two cases*** because, in my mind, they are two cases despite the overlap of the parties and the overlap at a broad general level of the technology. …. I think probably just as a matter of common sense, ***a case that involves eight patents will be more difficult to manag***e … ***I'm certainly very concerned about, if we get to trial, what a trial would look like with eight patents and in particular with four on each side***. And I recognize that I could defer deciding trial-relating issues until later in the case. But the reason I don't think that is the best exercise of my discretion here it is just too easy to see how ***at every step of this case things will be more complicat***ed and therefore probably proceed more slowly if I have what are effectively two cases, eight patents, four on each side, combined into one case.

**Ex. 4,** *LG Elecs.* Trans. at 21:2-22:8 (emphasis added). Even where cases are not formally separated, the Court has found that severance for trial serves judicial economy. *See Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (finding in large patent cases, "experienced judges use bifurcation and trifurcation" of issues for trial "***to maintain manageability of the volume and complexity of the evidence presented to a jury***") (internal quotation and citations omitted). Moreover, whereas separate trials (of consolidated claims) usually result in one judgement, whereas severed claims have the benefit of "becom[ing] entirely independent actions to be tried, and judgement entered thereon, independently." *Rodin Properties-Shore Mall v. Cushman & Wakefield, Inc.*, 49 F. Supp. 2d 709, 720 (D.N.J. 1999) (internal citations and quotations omitted); *Gregory v. FedEx Ground Package Sys.*, No. 10-cv-630, 2012 2012 WL 23966861, at *13 (E.D. Va. June 25, 2012) (noting that "severance accomplishes more than

separate trials," because "[s]evered claims become entirely independent actions upon which a court may enter final, appealable orders") (citations omitted).

### 3.    Safeguarding Principles of Fundamental Fairness

10x filed its Complaint against NanoString on the Church Patents was filed six months prior to NanoString's assertion of the 689 Patent counterclaim. There are no common set of facts or even overlapping product development stories that might make a single trial sensible. Instead, NanoString's unrelated counterclaims would only serve to confuse the jury when considering 10x's earlier claims. As Judge Andrews noted, combining issues into a single case is not in the interest of justice:

> In these two related cases, I have motions to consolidate [] and a motion for leave to amend answer, etc. []. All three motions, in essence, present only one issue, which whether I should formally combine these two cases in some manner. In the first case, ***Plaintiff asserts its patents against Defendants' product. In the second case, the roles are reversed.***
>
> I DENY all three motions. I understand the Acerta side to want to have a joint trial on its patent claim with the patent claims of the Pharmacyclis side. ***I do not think it is in the interests of justice to take what is an already extremely complex subject matter, both legally and factually, and to combine it with another complex subject matter just because some of the technology discussion will be similar or the same***. … Acerta's patent claim involves DOE, a separate infringement analysis, a separate analysis of Pharmacyclis' product, and likely testimony about the invention story of Acerta's patent, none of which will be relevant in the trial relating to Pharmacyclis' patents. Thus, that is why I am not going to consolidate the cases for trial. I also note that that the motion to amend is sought for no reason other than to have Acerta's case appear as counterclaims. If I were to grant Acerta's motion to amend, I would sever the counterclaims for trial, as I have regularly done since being advised in my first year as a judge that ***to go trial on "cross-claims" of patent infringement was very confusing to the jury***. I think that would be the case here.

**Ex. 10**, *Pharmacyclis v. Acerta Pharma*, No. 17-1582-RGA (D. Del. Oct. 3, 2018), D.I. 73 (emphasis added). To safeguard the principles of fairness, 10x's earlier patent claims should be heard first and should be heard by a different jury than NanoString's unrelated counterclaims.

Plaintiffs' proposal accomplishes these goals without prejudicing NanoString's time to trial or discovery efficiencies.

## VI.    CONCLUSION

10x respectfully asks the Court to:

(a) Sever all claims, defenses, and counterclaims relating to U.S. Patent No. 11,377,689 from the 261 Case, including NanoString's Eleventh Count and 10x's defenses thereto: 10x's Declaratory Judgement Counterclaim Counts VI [sic: I] and VII [sic: II] and NanoString's defenses thereto; and

(b) Consolidate all claims, defenses, and counterclaims relating to U.S. Patent No. 11,377,689 to the 1375 case and instruct the parties to submit a scheduling order in the 1375 Case that aligns with the 261 Case for all pre-trial deadlines and a proposed trial date soon after the schedule 261 Case and 595 Case trial dates.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*

_____

OF COUNSEL:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA  94065
(650) 802-6000

Samantha Jameson
Ronald J. Pabis
Kiley White
TENSEGRITY LAW GROUP LLP
8260 Greensboro Drive, Suite 260
McLean, VA  22102-3848
(650) 802-6000

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Plaintiff 10x Genomics, Inc.*

MORRIS JAMES LLP

*/s/ Cortlan S. Hitch*

OF COUNSEL:

Michael J. Tuteur
Ruben J. Rodrigues
Geoffrey M. Raux
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, MA  02199
(617) 502-3284

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch ((#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
 (302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Plaintiff President and Fellows
of Harvard College*

November 23, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 23, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 23, 2022, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                              *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Edward R. Reines, Esquire                                          *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
Yiqun Zhang, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Amanda Branch, Esquire                                            *VIA ELECTRONIC MAIL*
Christopher M. Pepe, Esquire
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Natalie C. Kennedy, Esquire                                      *VIA ELECTRONIC MAIL*
Yi Zhang, Esquire
767 Fifth Avenue
New York, NY  10153-0019
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

*/s/ Cameron P. Clark*
_____
Cameron P. Clark (#6647)