**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>      Plaintiffs,<br><br>      v.<br><br>NANOSTRING TECHNOLOGIES, INC.,<br><br>      Defendant. | C.A. No. 22-cv-261-MFK<br><br>DEMAND FOR JURY TRIAL |

## SECOND AMENDED COMPLAINT

Plaintiffs 10x Genomics, Inc. ("10x") and President and Fellows of Harvard College ("Harvard") allege in their Second Amended Complaint for patent infringement against Defendant NanoString Technologies, Inc. ("NanoString") as follows:

## NATURE OF THE ACTION

1. This is an action for infringement of U.S. Patent Nos. 10,227,639 ("the 639 Patent"), 11,021,737 ("the 737 Patent"), 11,293,051 ("the 051 Patent"), 11,293,052 ("the 052 Patent"), 11,293,054 ("the 054 Patent"), and 11,542,554 ("the 554 Patent) (collectively, the "Asserted Patents"). This action arises under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. § 271.

## THE PARTIES

2. 10x is a Delaware corporation with its principal place of business at 6230 Stoneridge Mall Road, Pleasanton, CA 94588.

3. 10x is a pioneering innovator of genomics and sequencing technologies that are providing life science researchers and clinicians an unprecedented understanding of biology. By

elegantly combining its proprietary hardware, chemistry, and software, 10x has developed and brought to market award-winning products that give single cell and spatial views of complex biological systems. 10x's products have enabled previously infeasible forms of research in the life sciences in areas of critical importance to human health, including cancer research, neuroscience, immunology, infectious disease, and developmental biology.

4.      Harvard is a Massachusetts educational institution with a principal place of business in Cambridge, MA. Harvard is a patent owner and licensor for the Asserted Patents.

5.      On information and belief, NanoString is a Delaware corporation with its principal place of business in Seattle, WA.

6.      NanoString makes, uses, sells, offers to sell, exports, and/or imports in the United States products, services, and components that have been and are used to infringe one or more claims of the Asserted Patents.

<u>**JURISDICTION AND VENUE**</u>

7.      Plaintiffs incorporate the foregoing paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

8.      This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C § 1 *et seq.*, including in particular under 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendant, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because NanoString is a Delaware corporation and thus resides in this district.

## BACKGROUND

**A.    10x's Groundbreaking Single Cell and Spatial Technologies**

10.    10x is a life sciences technology company founded in 2012 in Pleasanton, California by Drs. Serge Saxonov and Benjamin Hindson. Since its inception, 10x has focused on building new technologies to enable breakthrough discoveries and accelerate the understanding of biology. To date, 10x has invested hundreds of thousands of hours and approximately $1 billion in research and development to invent, design, and develop its proprietary line of products for understanding biology at unprecedented resolution and scale. 10x continues to invest significant time and money to further innovate and bring ground-breaking new products and capabilities to market.

11.    10x is now a worldwide leader in genomics, the comprehensive study of biological systems at a molecular and cellular level. Since 10x's first commercial launch in 2015, 10x's expanding suite of products has fueled a revolution in genomics, winning wide acclaim and commercial success. 10x has achieved an installed base of more than 3,500 instruments around the world, including at all of the top 100 global research institutions and all of the top 20 global biopharmaceutical companies. In 2021, annual sales of 10x products exceeded $490 million, a 64% increase over 2020.

12.    Over 4500 scientific articles have been published based on data generated from 10x products, including hundreds of articles in top journals such as *Cell*, *Science*, and *Nature*. This scientific work details the use of 10x products to discover, for example: molecular mechanisms that lead to brain, breast and lung cancers; how the immune system reacts to COVID-19 infection; and a new type of lung cell that causes cystic fibrosis. The paradigm-changing nature of 10x's products has led to numerous accolades, including seven 10x products being named to *The Scientist* magazine's Top 10 Innovations list between 2015 and 2021.

13.     10x's Chromium platform has been essential to enabling single cell genomics—the study of biology at a cell-by-cell resolution and at a massive, system-wide scale, ushering in a single-cell revolution hailed by *Science* magazine as the 2018 "Breakthrough of the Year." Whereas traditional biology relies on "bulk analysis" in which tissue is analyzed as averages across the sample, 10x's breakthrough single cell products enable researchers to analyze samples on a single cell basis—for millions of cells per experiment—thereby preserving information that is specific to each cell in the sample. 10x's single cell products do this by putting a different "tag" (a nucleic acid barcode) on each single cell in a sample, which can then be analyzed using sequencers to read the contents. The Chromium X, which launched in July 2021 and enables expansion of single cell studies to million-cell experiments, is the latest addition to 10x's award-winning platform and was named a Top 10 Innovation in 2021 by *The Scientist* magazine. https://www.the-scientist.com/features/2021-top-10-innovations-69438.

14.     10x, through its Spatial Transcriptomics and later Visium products, has catalyzed the field of spatial analysis by providing commercial offerings that enable true spatial discovery. Spatial analysis allows the large-scale interrogation of biological analytes with their spatial context. In contrast to traditional techniques in which analytes from a biological tissue are blended and analyzed as an average from various parts of the tissue, spatial analysis preserves information about the positions of the analytes in the tissue. This allows researchers and clinicians to build a comprehensive map—a kind of Google Earth—of where each analyte is, so that function can be tied to location. 10x's innovative spatial products use a tagging approach, analogous to that used in its single cell products, where the tags indicate the location of the analyte in the tissue rather than the cellular origin of the analyte. In 2020, *Nature Methods* named spatially resolved transcriptomics its "Method of the Year" and featured 10x's spatial technology on the cover. *See*

https://www.nature.com/articles/s41592-020-01033-y. The 10x Visium Spatial Gene Expression product was named among the *Scientist* magazine's Top 10 Innovations in 2020. The power of Visium was again acknowledged in the February 2022 issue of *Science Translational Medicine*, in which a Visium study was a featured article and provided the cover illustration. *See* https://www.science.org/toc/stm/14/632.

**B.     10x Invests In Developing *In Situ* Technologies**

15.     Most current molecular analyses, including single cell and spatial technologies, involve removing molecules from their native environment for analysis. *In situ* analysis, by contrast, aims to measure and analyze a large number of molecules directly in tissue samples and capture the precise location of those molecules at sub-cellular resolution.

16.     In 2020, 10x announced its acquisition of ReadCoor, Inc., founded based on George Church's work at Harvard, obtaining intellectual property, key technology advances, and deep talent and expertise in the emerging *in situ* field.

17.     On December 8, 2022, 10x Genomics commercially launched its Xenium Platform for In Situ Analysis, built from its investments in *in situ* technology. Xenium is a complete platform—including the Xenium Analyzer instrument, Xenium In Situ reagents and panels, Xenium Explorer software, and the full support of 10x's team of spatial experts—designed to create spatial maps of gene expression in the original tissue at true cellular and subcellular resolutions.

**C.     NanoString's Infringing CosMx SMI Platform and Technology Access Program**

18.     Nearly half a year after 10x's widely observed acquisition, NanoString announced the launch of its Technology Access Program for the Spatial Molecular Imager in March 2021. On November 9, 2021, NanoString announced its new, commercially-branded CosMx Spatial

Molecular Imager (SMI), which is purported to provide spatially resolved mapping data and imaging for RNA and protein at a single-cell and subcellular resolution. NanoString markets the CosMx SMI as providing "high-plex *in situ* analysis" with "quantification and visualization of up to 1,000 RNA and 100 validated protein analytes." https://www.nanostring.com/products/cosmx-spatial-molecular-imager/overview/. Through its CosMx SMI Technology Access Program ("CosMx TAP"), NanoString offers to its customers an *in situ* spatial molecular imaging service using its CosMx SMI platform. NanoString practices the Asserted Patents by using the CosMx SMI workflow on behalf of its own scientists and researchers and for its CosMx SMI TAP customers. Through the CosMx SMI TAP, customers submit tissue samples to NanoString's Translational Services Lab. NanoString processes samples using its CosMx SMI platform and provides customers with reports including raw data and analyzed results. *See* https://www.nanostring.com/products/cosmx-spatial-molecular-imager/technology-access-program/.

19.    NanoString advertises, offers for sale, and now sells, ships, and installs the CosMx SMI platform to and for customers in the United States. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). NanoString's CosMx SMI platform customers, collaborators, and partners, including for example researchers at Wake Forest University, have practiced and continue to practice one or more claims of the Asserted Patents by using the CosMx SMI workflow and with NanoString's knowledge. *See* Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx).

20.     The "Accused Instrumentalities" are all products, components, and services that are made, used, performed, offered to sell, sold, imported into the United States and/or supplying from the United States by or on behalf of NanoString in connection with NanoString's CosMx Spatial Molecular Imaging ("CosMx SMI") platform. The Accused Instrumentalities include, for example and without limitation, instruments, software, reagents and consumables used by or provided by NanoString in connection with its CosMx SMI Platform.

### D.     The Patents In Suit

21.     Through the development and subsequent making, using, selling, offering for sale, importing and exporting of the Accused Instrumentalities, and performing every step of the patented invention by using products, services, devices, systems, and/or components of systems that embody the patented inventions, such as the CosMx SMI platform NanoString has and continues to infringe the "Asserted Patents":

(a)     U.S. Patent No. 10,227,639, entitled "Compositions and Methods for Analyte Detection" (Exhibit 1);

(b)     U.S. Patent No. 11,021,737, entitled "Compositions and Methods for Analyte Detection" (Exhibit 2);

(c)     U.S. Patent No. 11,293,051, entitled "Compositions and Methods for Analyte Detection" (Exhibit 3);

(d)     U.S. Patent No. 11,293,052, entitled "Compositions and Methods for Analyte Detection" (Exhibit 4);

(e)     U.S. Patent No. 11,293,054, entitled "Compositions and Methods for Analyte Detection" (Exhibit 5); and

(f)     U.S. Patent No. 11,542,554, entitled "Method and Apparatus for Volumetric Imaging" (Exhibit 6).

22.     The 639 Patent was duly and legally issued on March 12, 2019, by the United States Patent and Trademark Office. U.S. Application No. 14/366,486, which issued as the 639 Patent,

claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, and Provisional Application No. 61/579,265, filed on December 22, 2011. Daniel Levner, Je-hyuk Lee, George M. Church, and Michael Super are named inventors on the face of the 639 Patent.

23.     Harvard is the sole legal owner of the 639 Patent. A true and correct copy of the assignment abstract and record of the 639 Patent is attached as Exhibit 7. The 639 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

24.     The 737 Patent was duly and legally issued on June 1, 2021, by the United States Patent and Trademark Office. U.S. Application No. 16/941,585, which issued as the 737 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, Provisional Application No. 61/777,383, filed on March 12, 2013, and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Je-hyuk Lee, Daniel Levner, and Michael Super are named inventors on the face of the 737 Patent.

25.     Harvard is the sole legal owner of the 737 Patent. A true and correct copy of the assignment abstract and record of the 737 Patent is attached as Exhibit 8. The 737 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

26.     The 051 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 17/238,642, which issued as the 051 Patent, claims the benefit of Application No. PCT/US2012/071398, filed on December 21, 2012, Provisional Application No. 61/777,383, filed on March 12, 2013, and Provisional Application No. 61/579,265, filed on December 22, 2011. George M. Church, Je-Hyuk Lee, Daniel Levner, and Michael Super are the named inventors of the 051 Patent.

27.     Harvard is the sole legal owner of the 051 Patent. A true and correct copy of the assignment abstract and record of the 051 Patent is attached as Exhibit 9. The 051 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

28.     The 052 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 17/238,682, which issued as the 052 Patent, claims the benefit of PCT Application No. PCT/US12/71398, filed December 21, 2012, U.S. Provisional Application No. 61/579,265, filed December 22, 2011, and Provisional Application No. 61/777,373, filed March 12, 2013. George M. Church, Je-Hyuk Lee, Daniel Levner, and Michael Super are the named inventors of the 052 Patent.

29.     Harvard is the sole legal owner of the 052 Patent. A true and correct copy of the assignment abstract and record of the 052 Patent is attached as Exhibit 9. The 052 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

30.     The 054 Patent was duly and legally issued on April 5, 2022, by the United States Patent and Trademark Office. U.S. Application No. 16/393,215, which issued as the 054 Patent, claims the benefit of PCT Application No. PCT/US12/71398, filed December 21, 2012, and U.S. Provisional Application No. 61/579,265, filed December 22, 2011. Daniel Levner, Je-Hyuk Lee, George M. Church, and Michael Super are the named inventors of the 054 Patent.

31.     Harvard is the sole legal owner of the 054 Patent. A true and correct copy of the assignment abstract and record of the 054 Patent is attached as Exhibit 10. The 054 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

32.     The 554 Patent was duly and legally issued on January 3, 2023, by the United States Patent and Trademark Office. U.S. Application No. 17/393,534, which issued as the 554 Patent, claims the benefit of PCT Application No. PCT/US2016/060279, filed November 3, 2016, and U.S. Provisional Application No. 62/250,182, filed November 3, 2015. Evan R. Daugharthy, Richard C. Terry, Je-Hyuk Lee, George M. Church, and Benjamin W. Pruitt are the named inventors of the 054 Patent.

33.     Harvard is the sole legal owner of the 554 Patent. A true and correct copy of the assignment abstract and record of the 554 Patent is attached as Exhibit 11. The 054 Patent is exclusively licensed to 10x, including *inter alia* the right to sue NanoString for its acts of infringement and to recover damages therefrom.

34.     NanoString has been on notice of the 639 and 737 Patents and NanoString's infringement thereof through use of the Accused Instrumentalities since at least February 28, 2022, when Plaintiffs filed their Complaint in this action and attached detailed infringement claim charts. NanoString has been on notice of the 051, 052, and 054 Patents and NanoString's infringement thereof through use of the Accused Instrumentalities since at least May 12, 2022, when Plaintiffs filed their First Amended Complaint in this action and attached detailed infringement claim charts. On information and belief, NanoString has been on notice of the 554 Patent since before the Second Amended Complaint, on or around its issuance on January 3, 2023, and no later than February 2, 2023, when NanoString's litigation counsel was notified of the issuance of the 554 Patent and that 10x planned to amend its pleadings to assert infringement of the 554 Patent. NanoString was contemporaneously on notice of how NanoString and other users of NanoString's CosMx SMI infringe the 554 Patent as a consequence of its receipt of the Complaint, the First Amended Complaint, and the proposed Second Amended Complaint.

35.     After Plaintiffs' February 28 Complaint and May 12 First Amended Complaint, NanoString has continued to expand and promote the infringing Accused Instrumentalities. For example, at the July 2022 AGBT meetings in Orlando, NanoString announced the CosMx SMI platform. *See* Exhibit 12 (https://www.genengnews.com/sponsored/exploring-spatial-biology-at-every-scale/). *See also* April 6, 2022 Joe Beechem podcast, https://mendelspod.com/podcasts/new-generation-comfortable-doing-thousand-things-time-reinventing-life-science-says-joe/. *See also* August 18, 2022 NanoString Paid Advertisement, https://www.nature.com/articles/d42473-022-00161-7. *See also* March 2, 2022 CosMx SMI Video, https://www.youtube.com/watch?v=aFq-j8oyUeg&list=PLkLM_7LgbwnaLXudTmhQrvR3JhDLB5ez2. *See also* April 19, 2022 Joe Beechem marketing video, https://www.youtube.com/watch?v=-ObG3sDJT28&list=PLkLM_7LgbwnannZW-f-tuMenQMT9QNo40. And in the face of its knowledge of the Asserted Patents and allegations of infringement thereof, NanoString announced its commercial launch and first shipments of the Accused Instrumentalities in December 2022. *See* Exhibit 13  (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform).

### COUNT I: Infringement of U.S. Patent No. 10,227,639

36.     Plaintiffs incorporate and reallege paragraphs 1 - 35 above as if fully set forth herein.

37.     NanoString has infringed and continues to infringe one or more claims of the 639 Patent, including without limitation claim 20, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment A provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

38.     NanoString, without authority and with knowledge of the 639 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 639 Patent, including without limitation claim 20, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 639 Patent including as described in Attachment A. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 639 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 639 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and

encouragement include, for example, distributing the documentation cited in Attachment A, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 639 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 639 Patent and of its own infringement and the infringement by others as a result of the Complaint filed on February 28, 2022.

39.     NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 639 Patent, including without limitation claim 20, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment A by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 639 Patent by using the Accused Instrumentalities

in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 639 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 639 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 639 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment A. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 639 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

40.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 639 Patent and the infringement of the 639 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 639 Patent since at least the February 28, 2022 Complaint as well as the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship,

install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraph 34. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

41.     NanoString's infringement has been willful since at least February 28, 2022.

42.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 639 Patent.

43.     Unless NanoString is enjoined from infringing the 639 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT II: Infringement of U.S. Patent No. 11,021,737

44.     Plaintiffs incorporate and reallege paragraphs 1 - 43 above as if fully set forth herein.

45.     NanoString has infringed and continues to infringe one or more claims of the 737 Patent, including without limitation claims 4, 16, 18, 21, and 47, , pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment B provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

46.     NanoString, without authority and with knowledge of the 737 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 737 Patent, including without limitation claims 4, 16, 18, 21, and 47, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused

Instrumentalities in the United States in a manner that infringes one or more claims of the 737 Patent including as described in Attachment B. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 737 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 737 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment B, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual

and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 737 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 737 Patent and of its own infringement and the infringement by others as a result of the Complaint filed on February 28, 2022.

47.     NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 737 Patent, including without limitation claims 4, 16, 18, 21, and 47,, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment B by NanoString's customers and end users. *See e.g.*, Exhibit 14      (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 737 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 737 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the

737 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 737 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment B. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 737 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

48.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 737 Patent and the infringement of the 737 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 737 Patent since at least the February 28, 2022 Complaint as well as the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

49.     NanoString's infringement has been willful since at least February 28, 2022.

50.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 737 Patent.

51.     Unless NanoString is enjoined from infringing the 737 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT III: Infringement of U.S. Patent No. 11,293,051

52.     Plaintiffs incorporate and reallege paragraphs 1 – 51 above as if fully set forth herein.

53.     NanoString has infringed and continues to infringe one or more claims of the 051 Patent, including without limitation claims 3, 26, 48, 53, 66, 77, 85, and 96, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment C provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

54.     NanoString, without authority and with knowledge of the 051 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 051 Patent, including without limitation claims 3, 26, 48, 53, 66, 77, 85, and 96, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 051 Patent including as described in Attachment C. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no

later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 051 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 051 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment C, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 051 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the

existence of the 051 Patent and of its own infringement and the infringement by others as a result of the First Amended Complaint filed on May 12, 2022.

55.     NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 051 Patent, including without limitation claims 3, 26, 48, 53, 66, 77, 85, and 96,, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment C by NanoString's customers and end users. *See e.g.*, Exhibit 14 ([https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx](https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx)). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 051 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 051 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 051 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the

Accused Instrumentalities, directly infringe the asserted claims of the 051 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment C. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 051 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

56.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 051 Patent and the infringement of the 051 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 051 Patent since at least the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

57.     NanoString's infringement has been willful since at least May 12, 2022.

58.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 051 Patent.

59.     Unless NanoString is enjoined from infringing the 051 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT IV: Infringement of U.S. Patent No. 11,293,052

60.     Plaintiffs incorporate and reallege paragraphs 1 – 59 above as if fully set forth herein.

61.     NanoString has infringed and continues to infringe one or more claims of the 052 Patent, including without limitation claims 26, 35, 65, 73, and 75, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the United States without authority the Accused Instrumentalities and/or components thereof. Attachment D provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

62.     NanoString, without authority and with knowledge of the 052 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 052 Patent, including without limitation claims 26, 35, 65, 73, and 75, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 052 Patent including as described in Attachment D. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 052 Patent by

NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 052 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment D, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 052 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 052 Patent and of its own infringement and the infringement by others as a result of the First Amended Complaint filed on May 12, 2022.

63.    NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 052 Patent, including without limitation claims

26, 35, 65, 73, and 75, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment D by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 052 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 052 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 052 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 052 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment D. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 052 Patent and as to the fact that at least the CosMx instruments and reagents are especially

made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

64.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 052 Patent and the infringement of the 052 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 052 Patent since at least the May 12, 2022 First Amended Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

65.     NanoString's infringement has been willful since at least May 12, 2022.

66.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 052 Patent.

67.     Unless NanoString is enjoined from infringing the 052 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT V: Infringement of U.S. Patent No. 11,293,054

68.     Plaintiffs incorporate and reallege paragraphs 1 - 67 above as if fully set forth herein.

69.     NanoString has infringed and continues to infringe one or more claims of the 054 Patent, including without limitation claim 18, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making and/or using, offering to sell, selling, and/or importing into the

United States without authority the Accused Instrumentalities and/or components thereof. Attachment E provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative Accused Instrumentalities.

70.    NanoString, without authority and with knowledge of the 054 Patent, has actively induced and continues to actively induce infringement of one or more claims of the 054 Patent, including without limitation claim 18, under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing and otherwise encouraging others, including NanoString's customers and end users such as scientists working at laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 054 Patent including as described in Attachment E. NanoString's active inducement of others' infringement began no later than its first shipment and/or installation of the Accused Instrumentalities to one of its customers, end users, partners, or collaborators, which occurred no later than December 6, 2022, the date of NanoString's announcement that it had begun commercial shipments of the Accused Instrumentalities. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, the first direct infringement of the 054 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). On information and belief, one or more of

NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 054 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment E, as well as user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 054 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 054 Patent and of its own infringement and the infringement by others as a result of the First Amended Complaint filed on May 12, 2022.

71.    NanoString, since at least its first shipment or commercial installation of the CosMx platform on or around December 6, 2022, has contributed and continues to contribute to the infringement by others of one or more claims of the 054 Patent, including without limitation claim 18, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale in the United States without authority the Accused Instrumentalities and/or components thereof specifically so that the Accused Instrumentalities will be used in an infringing manner by others, including use as described in Attachment E by NanoString's customers and end users. *See e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-

of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx). One or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 054 Patent by using the Accused Instrumentalities in accordance with NanoString's instructions and encouragement. *Id.* The CosMx Platform components, including specifically the instruments and reagents, were designed specifically to be used in a manner that infringes the asserted claims of the 054 Patent. Moreover, as shown in NanoString's instructional materials in which no alternative use of the CosMx platform is described, there is no other substantial use for the CosMx Platform or its components. The instruments and reagents are a material part of the claimed inventions of the 054 Patent that result in infringement when used. As a result of NanoString's selling and/or offering for sale of the CosMx Platform and its components, other entities on information and belief use these products for their intended purposes and according to NanoString's instructions and installation with the result that such entities, such as NanoString's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 054 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment E. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 054 Patent and as to the fact that at least the CosMx instruments and reagents are especially made and adapted for use in an infringing manner, are not staple articles of commerce, and do not have non-infringing uses.

72.     On information and belief, NanoString was aware of or acted with willful blindness to the existence of the 054 Patent and the infringement of the 054 Patent by itself and third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. As described above, NanoString knew, should have known, or was willfully blind to the existence of the 054 Patent since at least the May 12, 2022 First Amended

Complaint and has since knowingly acted in disregard of 10x's patent rights, including by continuing to use, market, and sell the infringing CosMx platform through NanoString's Technology Access Program and by continuing to market and now sell, ship, install, and encourage and instruct others to use the Accused Instrumentalities. *See, e.g., infra* paragraphs 34-35. *See also* https://nanostring.com/page/1/?s=cosmx (showing NanoString's on-going marketing, offering to sell, and encouragement and instruction of others to use the Accused Instrumentalities).

73.    NanoString's infringement has been willful since at least May 12, 2022.

74.    Plaintiffs have suffered and continue to suffer damages as a result of NanoString's infringement of the 054 Patent.

75.    Unless NanoString is enjoined from infringing the 054 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Instrumentalities will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

## COUNT V: Infringement of U.S. Patent No. 11,542,554

76.    Plaintiffs incorporate and reallege paragraphs 1 – 75 above as if fully set forth herein.

77.    The "554 Patent Accused Products" are all NanoString's CosMx Spatial Molecular Imager ("CosMx" or "CosMx SMI") Systems, including instruments, components, and consumables, that are made, used, performed, offered to sell, sold, exported, and/or imported into the United States by or on behalf of NanoString in connection with NanoString's CosMx SMI. The 554 Patent Accused Products include, for example and without limitation, NanoString's CosMx SMI and all products and components sold by NanoString for use in NanoString's CosMx system.

78.    NanoString has infringed and continues to infringe one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(a), literally or under the

30

doctrine of equivalents, by making and/or using, offering to sell, selling, exporting, and/or importing into the United States without authority the 554 Patent Accused Products and/or components thereof. Attachment F provides an exemplary infringement claim chart for one asserted claim and exemplary and/or representative 554 Patent Accused Products. NanoString's infringement has been willful since at least January 3, 2023 and continues to be willful.

79. NanoString, without authority and with knowledge of the 554 Patent, has actively induced since at least January 3, 2023, and continues to actively induce infringement of one or more claims of the 554 Patent, including without limitation claim 36, under 35 U.S.C. § 271(b) by intentionally instructing or otherwise encouraging others in the United States, including NanoString's customers and end users such as scientists working at laboratories, to make and/or use the claimed systems, such as by assembling, installing, and using the CosMx SMI platform in their research laboratories. Such making and using of the claimed systems constitutes infringement, literally or under the doctrine of equivalents, of one or more claims of the 554 Patent by such third parties, including as described in Attachment F. On December 6, 2022, NanoString announced that it had begun commercial shipments of the 554 Patent Accused Products. *See* Exhibit 13 (https://www.businesswire.com/news/home/20221206005433/en/NanoString-Begins-Commercial-Shipments-of-CosMx-Spatial-Molecular-Imager-and-AtoMx-Spatial-Informatics-Platform). On information and belief, NanoString provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more claims of the 554 Patent by those customers and end users. One or more of NanoString's customers and end users of the 554 Patent Accused Products have directly infringed and continue to directly infringe the 554 Patent by assembling and using the infringing 554 Patent Accused Products in accordance with NanoString's

instructions and encouragement, an example of which is set forth in the claim chart attached as Attachment F and incorporated herein by reference. On information and belief, the first direct infringement of the 554 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the 554 Patent Accused Products. *See, e.g.*, Exhibit 14 (https://investors.nanostring.com/news/news-details/2023/National-Geographic-Highlights-Use-of-the-CosMx-Spatial-Molecular-Imager-in-Alzheimers-Disease-Research/default.aspx).       On information and belief, one or more of NanoString's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 554 Patent by assembling and using the Accused Products in accordance with NanoString's instructions and encouragement. NanoString's instruction and encouragement include, for example, distributing the documentation cited in Attachment F, as well as other user guides, sample and slide preparation manuals, training decks, and published articles. On information and belief, NanoString's instruction and encouragement further include, for example, on-site installation of CosMx instruments at customers' facilities, on-site training and repairs, phone and email support, instrument and software updates, and distribution of webinars and other training videos. NanoString provides this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so results in the infringement of one or more method claims of the 554 Patent by those customers and end users and/or in their performing each step of one or more methods recited in those claims. As explained below, on information and belief, NanoString acts knowingly and/or willfully blind as to the existence of the 554 Patent and of its own infringement and the infringement by others by no later than January 3, 2023, the date of the issuance of the 554 Patent.

80.     On information and belief, NanoString has actively induced since at least January 3, 2023, and continues to actively induce infringement of one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(f)(1) by without authority supplying or causing to be supplied from the United States the CosMx SMI and/or components thereof, such as the CosMx SMI instrument, software, and computing system, and other materials that comprise all or a substantial portion of the components of the claims of the 554 Patent, where such components are uncombined in whole or in part in such manner to actively induce the combination of such components outside the United States in a manner that would infringe the 554 Patent if such combination occurred in the United States. NanoString's inducing acts include providing instructions and training for assembly outside the United States by NanoString's customers and end users of the CosMx SMI and/or components thereof, including the instrument, monitor, plates, and other materials, so that the CosMx SMI System may be used according to the training and instructions provided by NanoString.

81.     NanoString has contributed to the infringement since at least January 3, 2023, and continues to contribute to the infringement of one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(c) by importing, selling, and/or offering for sale material components of the claimed system, or has others perform such acts on its behalf, as described in Attachment F by NanoString's customers and end users. The CosMx SMI platform, including the instruments and reagents, was designed specifically to be made and used in a manner that infringes the asserted claims of the 554 Patent. For example, and without limitation, CosMx SMI platform is a material component of the claimed invention. When the CosMx platform components are assembled and used together, the claimed system is completed and claim 36 of the 554 Patent is infringed, as described for one example in Attachment F. Moreover, as shown in

NanoString's instructional materials in which no alternative assembly or use of the CosMx SMI is described, there is no other substantial use for the CosMx SMI platform. Thus, the CosMx SMI is a material part of the claimed inventions of the 554 Patent that when assembled by NanoString's customers and end users results in infringement. As a result of NanoString's selling, and/or offering for sale of the CosMx SMI, other entities on information and belief assemble and use these products for their intended purpose and according to their instructions with the result that such entities, such as NanoString's customers and users of the 554 Patent Accused Products, directly infringe the asserted claims of the 554 Patent, literally or under the doctrine of equivalents, for the reasons stated above and in Attachment F. As explained below, on information and belief, NanoString acts and has acted knowingly and willfully blind as to the existence of the 554 Patent claims and as to the fact that the CosMx SMI platform and reagents are especially made and adapted for this use in an infringing manner, is not a staple article of commerce, and does not have substantial non-infringing uses.

82.     On information and belief, NanoString has contributed to the infringement since at least January 3, 2023, and continues to contribute to the infringement of one or more claims of the 554 Patent, including without limitation claim 36, pursuant to 35 U.S.C. § 271(f)(2) by without authority supplying or causing to be supplied from the United States components of the CosMx SMI system, such as the CosMx SMI instrument, which are especially made or especially adapted for use in practicing the claims of the 554 Patent and are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States in the same way and for the same reasons as described in paragraph 81 above. NanoString supplies or

causes to be supplied from the United States components of the CosMx SMI System such as the instrument and components thereof that are assembled outside the United States by NanoString's customers and end users of the CosMx SMI.

83.     On information and belief, NanoString was aware of and has acted and continues to act with willful blindness to the existence of the 554 Patent and the infringement of the 554 Patent as described above by NanoString and by third parties, including without limitation users, customers, affiliates, parents, subsidiaries, third parties, importers, and/or sellers. On information and belief, NanoString knew, should have known, or was willfully blind to the existence of the 554 Patent on or around the issuance date of the 554 Patent (January 3, 2023) and in no event later than February 2, 2023, for the reasons described above as a result of the present and on-going litigation and due to the notice provided to NanoString's litigation counsel on February 2, 2023, of the issuance of the 554 Patent and Plaintiffs' intent to assert the 554 Patent against NanoString in this amended pleading.

84.     Plaintiffs have suffered and continue to suffer damages as a result of NanoString's direct and indirect infringement of the 554 Patent.

85.     NanoString's infringement of the 554 Patent has been willful since at least February 2, 2023, and continues to be willful, deliberate, and in disregard of 10x's patent rights. NanoString had knowledge of the 554 Patent and the infringement of the 554 Patent as described above, and has proceeded to design, develop, market, and sell the 554 Patent Accused Products in an attempt to compete with 10x, with full knowledge of the 554 Patent and its applicability to NanoString's products. NanoString's intentional, knowing, egregious, culpable, willful, wanton, malicious, bad faith, deliberate, consciously wrongful, and/or flagrant infringement entitles Plaintiffs to increased

damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86.     Unless NanoString is enjoined from infringing the 554 Patent, NanoString's efforts to design, develop, market, offer to sell, and sell the Accused Products will cause Plaintiffs to suffer irreparable injury for which damages are an inadequate remedy.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that the Court enter the following relief in its favor and against NanoString:

A.     For entry of judgment that the 639 Patent, 737 Patent, 051 Patent, 052 Patent, 054 Patent, and 554 Patent have been and continue to be directly and/or indirectly infringed by NanoString, either literally or under the doctrine of equivalents;

B.     For a declaration that each of the Asserted Patents is valid and enforceable;

C.     For permanent injunctions enjoining the aforesaid acts of infringement by NanoString, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them, including related individuals and entities, customers, representatives, distributors, and dealers. In the alternative, if the Court finds that an injunction is not warranted, Plaintiffs request an award of post-judgment royalty to compensate for future infringement;

D.     A judgment that NanoString's infringement of one or more claims of the Asserted Patents has been and continues to be willful;

E.     An award of all monetary relief adequate to compensate for damages resulting from NanoString's infringement, including lost profits but in no event less than a reasonable royalty under 35 U.S.C. § 284 for NanoString's infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

F.      A declaration that the case is an exceptional case and that NanoString be required to pay Plaintiffs' attorneys' fees pursuant to 35 U.S.C. § 285; and

G.      A judgment awarding Plaintiffs such other and further relief as the Court may deem just, reasonable, and proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Of Counsel:

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
Tensegrity Law Group LLP
555 Twin Dolphin Drive, Suite 650
Redwood Shores, CA  94065
(650) 802-6000

Samantha Jameson
Ronald J. Pabis
Kiley White
Tensegrity Law Group LLP
8260 Greensboro Drive, Suite 260
McLean, VA  22102-3848
(650) 802-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for 10x Genomics, Inc.*

Of Counsel:

Michael J. Tuteur
Ruben J. Rodrigues
Geoffrey M. Raux
Foley & Lardner LLP
111 Huntington Avenue, Suite 2500
Boston, MA  02199
(617) 502-3284

MORRIS JAMES LLP

*/s/ Cortlan S. Hitch*

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for President and Fellows
of Harvard College*

March 1, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 1, 2023, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Edward R. Reines, Esquire                                   *VIA ELECTRONIC MAIL*
Derek C. Walter, Esquire
Yiqun Zhang, Esquire
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1134
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Amanda Branch, Esquire                                      *VIA ELECTRONIC MAIL*
Christopher M. Pepe, Esquire
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC  20036
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

Natalie C. Kennedy, Esquire                                 *VIA ELECTRONIC MAIL*
Yi Zhang, Esquire
767 Fifth Avenue
New York, NY  10153-0019
*Attorneys for Defendant Nanostring*
*Technologies, Inc.*

/s/ *Cameron P. Clark*
_____
Cameron P. Clark (#6647)