IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

10X GENOMICS, INC. and PRESIDENT
AND FELLOWS OF HARVARD COLLEGE,

        Plaintiffs,

v.

NANOSTRING TECHNOLOGIES, INC.,

        Defendant.

Civ. No. 22-cv-261-MFK

**REPLY BRIEF IN SUPPORT OF NANOSTRING TECHNOLOGIES, INC.'S MOTION FOR LEAVE TO AMEND AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Dated: May 23, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

Christopher Pepe (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600,
Washington, DC 20036
Phone: (202) 682-7000
christopher.pepe@weil.com
amanda.branch@weil.com

Eric Hochstadt (admitted *pro hac vice*)
Natalie C. Kennedy (admitted *pro hac vice*)
Yi Zhang (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Phone: (212) 310 8145
natalie.kennedy@weil.com
yi.zhang@weil.com

*Attorneys for Defendant*
*NanoString Technologies, Inc.*

**TABLE OF CONTENTS**

I.    The Contract Claim Dismissal Arguments Are Fact-Intensive And Wrong Legally ...................................................................................................................1

II.    The Competition Claims Do Not Depend On A Contract Claim And The Dismissal Arguments Are Wrong As A Matter Of Antitrust And Unfair Competition Law ..................................................................................................6

CONCLUSION..............................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head Inc.*,
    486 U.S. 492 (1988)..................................................................................................6

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    2007 WL 4465195 (D. Minn. Dec. 18, 2007).........................................................9

*Astra USA, Inc., et. al v. Santa Clara County*,
    563 U.S. 110 (2011)..................................................................................................4

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007).....................................................................................6

*Cetel v. Kirwan Fin. Grp.*,
    460 F.3d 494 (3d Cir. 2006).....................................................................................5

*Chandler v. Phoenix Services*,
    419 F. Supp. 3d 972 (N.D. Tex. 2019) ...................................................................9

*Datatreasury Corp. v. Wells Fargo & Co.*,
    522 F.3d 1368 (Fed. Cir. 2008)................................................................................4

*In re Dell Computer Corporation*,
    FTC File No. C-3658 (Nov. 2, 1995).......................................................................8

*Digney York Assocs., LLC v. Weiss*,
    2023 U.S. Dist. LEXIS 13327 (D. Del. Jan. 26, 2023)............................................2

*Elkay Interior Sys. Int'l, Inc. v. Weiss*,
    No. 22-438-RGA-JLH, 2022 U.S. Dist. LEXIS 231674
    (D. Del. Dec. 27, 2022) ............................................................................................2

*Embury v. King*,
    191 F. Supp. 2d 1071 (N.D. Cal. 2001) ..................................................................3

*Fenn v. Yale University*,
    393 F.Supp.2d 133 (D. Conn. 2004).......................................................................3

*Frazier v. Am. Airlines, Inc.*,
    Civ. No. 03-734 JJF, 03-792, 2004 U.S. Dist. LEXIS 19875
    (D. Del. Sep. 30, 2004) .............................................................................................2

*Gen-Probe Inc. v. Ctr. for Neurological Study*,
    853 F.Supp. 1215 (S.D. Cal. 1993).........................................................................3

*Gilead Scis., Inc. v. Merck & Co.*,
    888 F.3d 1231 (Fed. Cir. 2018) ..................................................................................8

*Golden v. United States*,
    37 Fed. Cl. 155 (2018) ...............................................................................................3

*Huang v. Rector & Visitors of the Univ. of Va.*,
    Civ. No. 3:11-00050, 2011 U.S. Dist. LEXIS 145501
    (W.D. Va. Dec. 19, 2011) ..........................................................................................3

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
    527 F. Supp. 2d 1084 (N.D. Cal. 2007) .................................................................7, 9

*In re Indep. Serv. Orgs. Antitrust Litig.*,
    203 F.3d 1322 (Fed. Cir. 2000) ..................................................................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
    Civ. No. 13-440, 2014 U.S. Dist. LEXIS 134255 (D. Del. Sep. 24, 2014) ...............7

*Klem v. Wash. Mut. Bank*,
    295 P.3d 1179 (Wash. 2013) ......................................................................................8

*Kobe, Inc. v. Dempsey Pump Co.*,
    198 F.2d 416 (10th Cir. 1952) ...................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) .............................................................................................8

*Lenovo (United States) Inc. v. Interdigital Tech. Corp.*,
    No. 20-493, 2021 WL 1123101 (D. Del. Mar. 24, 2021) ..........................................6

*LePage's v. 3M*,
    324 F.3d 141 (3d Cir. 2003) ......................................................................................6

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
    2011 WL 13133973 (C.D. Cal. May 11, 2011) .........................................................9

*Microsoft Mobile, Inc. v. InterDigital, Inc.*,
    Civ. No. 15-723, 2016 U.S. Dist. LEXIS 49498 (D. Del. Apr. 13, 2016) ..............6, 7

*In re Negotiated Data Solutions LLC*,
    FTC File No. 051 0094 (Sept. 23, 2008) ...................................................................8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .....................................................................................2

*Philips N. Am., LLC v. Summit Imaging Inc.*,
    No. C19-1745JLR, 2020 WL 1515624 (W.D. Wash. Mar. 30, 2020) .......................8

*Rambus, Inc. v. Infineon Techs, AG*,
 304 F. Supp. 2d 812 (E.D. Va. 2004) ..................................................................................6

*In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*,
 Civ. No. 05-1671, 2006 U.S. Dist. LEXIS 101252 (C.D. Cal. June 21, 2006) ....................8

*Regeneron Pharm., Inc. v. Amgen Inc.*,
 No. 22-697-RGA-JLH, 2023 U.S. Dist. LEXIS 22855 (D. Del. Feb. 10, 2023) .................2

*In re Robert Bosch GmbH*,
 FTC File No. C-4377 (Nov. 26, 2012) .................................................................................8

*Rolo v. City Investing Co. Liquidating Trust*,
 155 F.3d 644 (3d Cir. 1998) .................................................................................................5

*Samsung Elecs. Co., Ltd. v. Panasonic Corp.*,
 747 F.3d 1199 (9th Cir. 2014) .............................................................................................8

*SCM Corp. v. Xerox Corp.*,
 645 F.2d 1195 (2d Cir. 1981) ..............................................................................................9

*Spinner v. Nutt*,
 631 N.E.2d 542 (Mass. 1994) ..............................................................................................5

*Tavoloni v. Mount Sinai Med. Ctr.*,
 984 F. Supp. 196 (S.D.N.Y. 1997) ......................................................................................4

*ThermoGen, Inc. v. Chou*,
 Civ. No. 98-01230, 1998 U.S. Dist. LEXIS 6953 (N.D. Ill. Apr. 30, 1998) .......................3

*Ultratec Inc., v. Sorenson Communs., Inc.*,
 No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 120062
 (W.D. Wis. Aug. 28, 2014) ..................................................................................................4

*United States v. Microsoft*,
 253 F.3d 34 (D.C. Cir. 2001) ...............................................................................................7

*In re Unocal*, 138 F.T.C. 1 (2004) ..................................................................................................8

*ZF Meritor, LLC v. Eaton Corp.*,
 696 F.3d 254 (3d Cir. 2012) .................................................................................................6

**Statutes**

Fed. R. Civ. P. 12 ............................................................................................................................2

**Other Authorities**

Antitrust Guidelines for the Licensing of Intellectual Property, U.S. Department
    of Justice and Federal Trade Commission (Jan. 12, 2017),
       https://www.justice.gov/atr/IPguidelines/download ................................................................. 9

Press Release, *10x Genomics Wins Permanent Injunction Against NanoString's
    CosMx Products* (May 17, 2023),
    https://investors.10xgenomics.com/news/news-details/2023/10x-Genomics-
    Wins-Permanent-Injunction-Against-NanoStrings-CosMx-
    Products/default.aspx ............................................................................................................. 10

As established in NanoString's detailed 241-paragraph pleading, the NIH grant that funded the Asserted Patents is conditioned upon Harvard's commitment to license the resulting technology on an ***open and non-exclusive basis***. In breach of this promise that NIH relied upon when it awarded $20M in taxpayer funds, Harvard exclusively licensed the technology to 10x, actively concealed the grant's non-exclusive licensing condition, and joined with 10x to file patent infringement lawsuits in the U.S. and elsewhere to stop competition.

Plaintiffs' opposition reads like a post-trial brief and thus runs afoul of basic procedure by controverting NanoString's allegations based on a partisan interpretation of the statements in the grant as merely "aspirational" or "freighted with caveats."  Plaintiffs likewise inject extra-pleading characterizations of Harvard's supposed intent, its licensing practices of technology resulting from the grant, and which third parties fall within the scope of the non-exclusive licensing commitment.

For example, Plaintiffs repeatedly argue that this case merely follows Harvard's course of dealing in its NIH grant processes – while Harvard has withheld exactly that discovery for well over a year. This highlights the prematurity of Plaintiffs' merits arguments, especially because the grant at issue in this case invokes that concealed grant history with emphasis. Likewise, Harvard and 10x shamelessly spin supposed NIH practices and policy without the competent evidence from a qualified expert that would be required for such arguments if this were merits briefing.

On the law, Harvard and 10x fare no better, as their opposition is riddled with errors. Most notably, there are numerous cases recognizing that NIH grants can be contracts and that competition-based claims for deception in acquiring patents do not depend on a breach of contract. In sum, Harvard and 10x fall short of meeting their heavy burden at the pleading stage to show that NanoString's counterclaims are futile and should not be adjudicated based on evidence.

**I.      The Contract Claim Dismissal Arguments Are Fact-Intensive And Wrong Legally**

Plaintiffs try to sidestep the plain words of the grant application unique to Harvard's

submissions. Harvard promised to "pursue open and non-exclusive licensing agreements that encourage innovations to be made widely available to researchers and commercial entities" and to "prevent exclusive licenses from potentially interfering with technology transfer", among other commitments to make the resulting technology widely available. D.I. 119 Ex. A ("FAC") ¶¶ 162-65. These statements are fairly interpreted as commitments to offer non-exclusive patent licensing agreements, particularly in context. Plaintiffs' responses are extra-pleading arguments that: (i) the commitments are supposedly "aspirational in nature"; (ii) that "Harvard has entered into numerous **non**-exclusive licenses to patents that arose from the grant application at issue"; and (iii) "if [a non-exclusive commitment] were the intent, Harvard and the NIH would not have documented it so obliquely." D.I. 131 ("Opp.") at 1, 3, 6 n.5 (emphasis in original). Such arguments, based on concealed evidence from Harvard's files outside of the text of the grant, is not a proper Rule 12 challenge.[1] *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

Harvard and 10x also contend that the promises set forth in the grant application only apply to software, protocol, and data sharing. Opp. at 6. Not so. The subject matter of the asserted patents clearly encompasses "protocols," and is thus within the scope of Plaintiffs' non-exclusive licensing commitments.[2] *See e.g.*, D.I. 92, Ex. 6 at 16:46-51 ("The device includes hardware and software functionality assembled to enact *a protocol*...."). The pertinent section of the grant application is

---

[1] *See also Regeneron Pharm., Inc. v. Amgen Inc.*, No. 22-697-RGA-JLH, 2023 U.S. Dist. LEXIS 22855, at *11-13 (D. Del. Feb. 10, 2023), *report and recommendation adopted* 2023 U.S. Dist. LEXIS 47244 (D. Del. Mar. 21, 2023); *Frazier v. Am. Airlines, Inc.*, Civ. No. 03-734 JJF, 03-792, 2004 U.S. Dist. LEXIS 19875 (D. Del. Sep. 30, 2004); *Elkay Interior Sys. Int'l, Inc. v. Weiss*, No. 22-438-RGA-JLH, 2022 U.S. Dist. LEXIS 231674, at *9 (D. Del. Dec. 27, 2022), *report and recommendation adopted sub nom. Digney York Assocs., LLC v. Weiss*, 2023 U.S. Dist. LEXIS 13327 (D. Del. Jan. 26, 2023).

[2] At best for Plaintiffs, this argument raises a factual dispute that is not appropriate for resolution at the pleading stage.

also directed to "innovations to be made widely available to researchers and commercial entities" and expressly refers to "patents" multiple times. FAC ¶¶ 162-64.

Harvard and 10x next assert that, as a matter of law, an NIH grant is not a contract. They are wrong. Numerous courts have recognized that an NIH grant indeed can be a contract. *See, e.g.*, *ThermoGen, Inc. v. Chou*, Civ. No. 98-01230, 1998 U.S. Dist. LEXIS 6953 at *2 (N.D. Ill. Apr. 30, 1998) ("***A grant may be understood as a contract*** between the granting agency, in this case NCI [a subdivision within NIH] and the grantee or recipient [institution]"); *Huang v. Rector & Visitors of the Univ. of Va.*, Civ. No. 3:11-00050, 2011 U.S. Dist. LEXIS 145501, at *48 (W.D. Va. Dec. 19, 2011) (noting that "there can be ***no serious doubt that a contract existed*** between NIH and [the applicant entity] in the form of the [NIH] grant"). As explained in *Embury v. King*:

> Plaintiff alleges that [Defendant] submitted a grant application to the NIH [which] was an offer to contract. The NIH accepted this offer by approving the grant…[Defendants] violated the agreement when it failed to distribute to Plaintiff the NIH funding provided for him. ***These allegations are sufficient to make out a claim for breach of contract enforceable by a third party beneficiary***.

*Embury v. King,* 191 F. Supp. 2d 1071, 1086-87 (N.D. Cal. 2001).

Plaintiffs cite two footnotes from *Golden v. United States*, 37 Fed. Cl. 155, 176 n. 21, 27 (2018), to support their contention that NIH (and NSF) grants are not contracts. Opp. at 9. But the Court of Federal Claims has since held otherwise. In *Housing Authority v. United States*, the court instead endorsed the view that an NSF grant is a binding contract, reasoning that "the failure of Congress to use the word 'contract' [in a regulatory scheme] does not preclude the holding that a binding contract is formed." 149 Fed. Cl. 614, 629-31 (2020). Further, "nothing in the language of the Bayh-Dole Act suggests that it expressly or impliedly preempts [breach of contract] claims." *Fenn v. Yale University*, 393 F.Supp.2d 133, 142 (D. Conn. 2004).

Plaintiffs are also mistaken that *Astra USA, Inc., et. al v. Santa Clara County*, 563 U.S. 110 (2011) applies here. Opp. at 10. *Astra* decided whether entities could bring a breach of contract

3

claim where the "form [Department of Health and Human Services] agreements…[with] no negotiable terms" merely acknowledge a statutory requirement. *Id.* at 118. Here, the contract provisions breached were unique and not statutory boilerplate.

*Tavoloni v. Mount Sinai Medical Center*, cited by Plaintiffs, is readily distinguishable on its facts. Opp. at 9. The case involved an employment action to enforce alleged commitments *from* the government. *Id.* It was not a case seeking to enforce promises made *to* the government, which many courts have found to be enforceable. *See, e.g.*, *U.S. ex rel. Feldman v. Van Gorp*, 697 F.3d 78 (2d Cir. 2012) (affirming fraud case for misrepresentations made to NIH and observing that the NIH grant was a "contract" entered into between government and defendants).[3]

Further, although 10x was not a party to the NIH grant, according to the well-pled allegations, 10x is bound by Harvard's and Dr. Church's commitment to license patents derived from the NIH grant on open, non-exclusive terms because such an encumbrance runs with the patent. FAC ¶¶ 169-74, 238. Patent owners cannot transfer an interest greater than what they possess, so assignees "take[] a patent subject to the legal encumbrances thereon." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008). 10x and Harvard have breached the NIH grant by refusing to offer a license to NanoString. FAC ¶ 240.

Moreover, NanoString fits squarely within the type of commercial entity alleged to be an intended beneficiary of the NIH grant contract. *Id.* ¶ 239. A party is an intended beneficiary where the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Spinner v. Nutt*, 631 N.E.2d 542, 546 (Mass. 1994). Plaintiffs cite no law

---

[3] Plaintiffs' reliance on *Ultratec Inc., v. Sorenson Communs., Inc.*, 2014 U.S. Dist. LEXIS 120062 (W.D. Wis. Aug. 28, 2014), an out-of-Circuit decision, is unavailing. Opp. at 10-11. In *Ultratec*, there was never a promise to license the asserted patents on a nondiscriminatory basis. *Id.* at *18-19. And the patent-holder never represented to the government entity that they would make non-exclusive licenses available to commercial entities to promote innovation. *Id.* at *24-25.

for the radical argument that only entities with "expressly confer[red]" rights to enforce a contract are intended third-party beneficiaries. Opp. at 2. Indeed, when quoting *Interface Kanner* to argue that third parties to government contracts are only "incidental beneficiaries," Plaintiffs conveniently ignore that the court held that "[the alleged third-party beneficiary] ***need not be specifically or individually identified*** in the contract, [although] they must fall within a class clearly identified to be benefited thereby." 704 F.3d 927, 933 (11th Cir. 2013). NanoString, a commercial entity working in the genomics field and a member of the scientific and research community, clearly falls within the class intended by the parties to benefit from this agreement and thus is a third-party beneficiary. *See* FAC ¶ 162.

Finally, Harvard and 10x make a half-hearted and incorrect statute of limitations argument regarding grant "expiration." Opp. at 3, 12-13. It would be illogical for the promises made in the grant application to be operative only during the years NIH gave funding, seeing as the promises apply to patents that only issued years later. Plaintiffs also attempt to rewrite history by wrongly contending they "produced the [Grant] promptly" to NanoString. Not so. NanoString did not even initially receive the complete grant application from Plaintiffs, but instead received them from coordinated case Defendant Vizgen. NanoString's well-plead allegations demonstrate that Plaintiffs actively concealed the complete grant application from NanoString and the public at large for years. FAC ¶¶ 175-77. As such, fraudulent concealment precludes any argument that NanoString's claims are time barred where (1) Plaintiffs actively misled NanoString, (2) which prevented NanoString from recognizing the validity of its claims within the statute of limitations period, and (3) NanoString could not have uncovered the relevant facts through due diligence. *See Cetel v. Kirwan Fin. Grp.*, 460 F.3d 494, 509 (3d Cir. 2006); *see also In re Lamictal Indirect*

*Purchaser and Antitrust Consumer Litigation,* 172 F. Supp. 3d 724, 738–39 (D.N.J. 2016). The breach of contract claim, brought within weeks of uncovering this material information, is timely.

## II. The Competition Claims Do Not Depend On A Contract Claim And The Dismissal Arguments Are Wrong As A Matter Of Antitrust And Unfair Competition Law

Harvard and 10x do not challenge the sufficiency of the antitrust market allegations in which to assess their challenged conduct: the worldwide Single-Cell Spatial Transcriptomics ("SST") market. Opp. at 16 n.10. Instead, Harvard and 10x assert that NanoString's competition claims are supposedly "derivative" of the breach of contract claim and that "the elements of attempted monopolization" are not pleaded. *Id*. at 3. They are wrong.

The breadth of the Third Circuit Sherman Act jurisprudence is clear. Exclusionary conduct is behavior "that impairs the opportunities of rivals," *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007), and "[t]he means of illicit exclusion … are myriad." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 278 (3d Cir. 2012); *see also LePage's v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003) ("'Anticompetitive conduct' can come in too many different forms, and is too dependent on context, for any court or commentator ever to have enumerated all the varieties.").

It is well-settled antitrust law that the type of deceptive conduct alleged in detail by NanoString (FAC ¶¶ 158-207)—reneging on a promise to license a patent on a non-exclusive basis—can constitute actionable conduct. *See Allied Tube & Conduit Corp. v. Indian Head Inc.*, 486 U.S. 492, 500 (1988); *Broadcom*, 501 F.3d at 314; *see also Lenovo (United States) Inc. v. Interdigital Tech. Corp.*, 2021 WL 1123101, at *5, 21 (D. Del. Mar. 24, 2021) (applying *Broadcom* and denying dismissal of a claim based on violation of promise to license patent on non-exclusive terms); *Microsoft Mobile, Inc. v. InterDigital, Inc.*, 2016 U.S. Dist. LEXIS 49498, at *2-4 (D. Del. Apr. 13, 2016) (same); *Rambus, Inc. v. Infineon Techs, AG*, 304 F. Supp. 2d 812, 814-17 (E.D.

6

Va. 2004) (allowing Section 2 and California unfair competition law claims based on "manipulative and bad faith participation in the…standard-setting process").

Despite Plaintiffs' suggestion (Opp. at 19) to the contrary, there is no requirement that the NIH be a standard-setting organization ("SSO") for a Sherman Act Section 2 claim. Plaintiffs' failure to honor explicit conditions of the grant, including its non-exclusive licensing commitment (FAC ¶ 165), is not so materially different that Plaintiffs are shielded from antitrust scrutiny. Plaintiffs cite no case that dismisses a similar antitrust claim like this one at the pleading stage and NanoString is not aware of one. There is no procompetitive justification for reneging a promise to license;[4] rather, Plaintiffs' intent is alleged to be and clearly is anticompetitive. FAC ¶¶ 178-86.

Harvard and 10x also ignore that where, as here, patent litigations are causally connected to anticompetitive harm, a cognizable Sherman Act claim is stated. *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952) (allowing antitrust claims that alleged "the real purpose of the infringement action and the incidental activities of [Plaintiff's] representatives was to further the existing monopoly and to eliminate [Defendant] as a competitor"); *Intellectual Ventures I LLC v. Symantec Corp.*, 2014 U.S. Dist. LEXIS 134255, at *12 (D. Del. Sept. 24, 2014) (applying *Kobe* and denying motion to strike affirmative defense of patent misuse by unlawful monopolization based on enforcement actions brought "to maintain a monopoly with anticompetitive results"); *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *9, 14 (N.D. Cal. May 21, 2018) (denying dismissal of antitrust claims where non-"sham" patent litigation "can reasonably be portrayed as the mechanism to carry out" an overall anticompetitive scheme)[5]; *see also Hynix Semiconductor, Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007) (otherwise

---

[4] "Intellectual property rights do not confer a privilege to violate the antitrust laws." *United States v. Microsoft*, 253 F.3d 34, 63 (D.C. Cir. 2001) (internal citation omitted).
[5] *Arista Networks* shows that, in a non-SSO context, a Defendant can be liable for switching from an "open" to a "closed" licensing policy, as Harvard and 10x have. 2018 WL 11230167, at *14.

7

protected litigation can be considered part of an "anticompetitive scheme"). And in *Microsoft Mobile, Inc. v. InterDigital, Inc.*, the court concluded that patent infringement suits "are part of the way in which [Plaintiff] accomplishes its alleged anticompetitive scheme." 2016 U.S. Dist. LEXIS 49498 at *12 (D. Del. Apr. 13, 2016). As alleged, 10x and Harvard, through their joint licensing arrangement, are engaged in the same anti-competitive campaign that is not immune from scrutiny.

Further, NanoString's state law claims do not depend on the Sherman Act claim, and Plaintiffs' throw-away argument that all state competition law claims should be dismissed because they "merely rehash" the federal antitrust claim is wrong. Opp. at 20. For example, California Unfair Competition Law claim has a "broad remedial purpose." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) ("The UCL covers a wide range of conduct…. [U]nder section 17200, 'a practice may be deemed unfair even if not specifically proscribed by some other law.'"). Likewise, Plaintiffs invite reversible error to dismiss a California Cartwright Act claim on the ground that "California's antitrust statute [is] coextensive with the Sherman Act." *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1205 n.4 (9th Cir. 2014); *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013) (Washington unfair competition claim "may be predicated upon … an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest.").

These broader state law competition claims also are cognizable outside of the SSO context. For example, *In re Unocal* involved misrepresentations to a **state regulator and industry groups** that certain gasoline research was non-proprietary and in the public domain while pursuing patents relating to the same research. 138 F.T.C. 1 (2004). The FTC ordered the company to cease and desist from all efforts to assert these patents. *Id.* In a follow-on private civil litigation to *In re Unocal*, the district court denied dismissal of plaintiffs' claims for California state law antitrust

claims and unjust enrichment. *In re Reformulated Gasoline (RFG) Antitrust & Patent Litig.*, CV 05-1671 CAS (VBKx), 2006 U.S. Dist. LEXIS 101252, at *38-40, *45-46 (C.D. Cal. June 21, 2006).[6] This kind of conduct also can give rise to NanoString's defense of unclean hands and patent misuse. FAC p. 11. *See Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018). Harvard and 10x fail to address this cognizable defense and state law competition claims.

In a radical argument to obtain antitrust immunity, Plaintiffs misinterpret the out-of-Circuit decision in *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195 (2d Cir. 1981), for the sweeping proposition that a patent holder gains antitrust immunity if they are successful in litigation. Opp. at 19-20. But *SCM* makes clear that that antitrust scrutiny is appropriate of a patent enforcement action, like here, where "the acquisition itself is unlawful." 645 F.2d at 1206. Indeed, many cases hold that patent litigation can be part of an overall anticompetitive scheme, regardless of whether it is a "sham." *E.g.*, *Hynix Semiconductor, Inc.*, 527 F. Supp. 2d at 1097. Here, NanoString is plausibly challenging the acquisition and licensing of patents under false pretenses.[7] Finally, *Bio-Rad* is also distinguishable because 10x did not claim that it was entitled to a non-exclusive license and the Court was only analyzing the litigation in isolation as the alleged anticompetitive conduct. *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 64 (D. Mass. 2020).

Harvard as owner of the patent is liable for its anticompetitive conduct in the market where it licenses. Opp. at 16. A licensor, for antitrust analysis purposes, is a market participant; otherwise, there would be no recourse against such patent-holders violating the antitrust laws. *Chandler v.*

---

[6] *See also In re Robert Bosch GmbH*, FTC File No. C-4377 (Nov. 26, 2012) (settling allegations that SPX reneged on a commitment to license certain patents on FRAND terms); *In re Negotiated Data Sols. LLC*, FTC File No. 051 0094 (Sept. 23, 2008); *In re Dell Computer Corp.*, FTC File No. C-3658 (Nov. 2, 1995).

[7] Plaintiffs' reliance on *Amneal Pharms. LLC (In re Suboxone)*, 2017 WL 36371 (E.D. Pa. Jan. 4, 2017), is misplaced because that case did not involve a commitment to give non-exclusive licenses of a patent. Opp. at 19. *Chip-Mender, Inc. v. Sherwin-Williams Co.*, Opp. at 20, is also inapposite because there was no "question of antitrust, because a patent-holder in possession of a valid patent cannot be liable for restraining competition." 2006 WL 13058, at *5 (N.D. Cal. Jan. 3, 2006).

9

*Phoenix Servs.*, 419 F. Supp. 3d 972, 985 (N.D. Tex. 2019) (patent owner can unlawfully monopolize a market through infringement suits and licensing demands, without engaging in any direct sales); *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 2007 WL 4465195, at *7 (D. Minn. Dec. 18, 2007) (plaintiff adequately alleged that defendant "has the ability, through its licensing programs, to wield market power"); *Magnetar Techs. Corp. v. Intamin, Ltd.*, 2011 WL 13133973, at *7 n.3 (C.D. Cal. May 11, 2011) ("[A] patent-holder might wield monopoly power…through its licensing program."). NanoString alleged in detail how Harvard and 10x have entered into an anticompetitive licensing arrangement, which Harvard never materially disputes. FAC ¶¶179-80; Opp. at 16. Thus, Harvard is properly a defendant in the competition claims.

Finally, Plaintiffs' ongoing anticompetitive misconduct corroborates the plausibility of NanoString's competition claims. After obtaining an injunction from a German court against NanoString, 10x issued a press release on May 17, 2023 stating that it is "seeking ***additional injunctions***" throughout the world "***where NanoString's infringing CosMx products are sold***" based on the patents that Plaintiffs committed to non-exclusively license and threatening NanoString's customers with the potential loss of their preferred research tool in an effort to coerce them to switch from NanoString's CosMx to 10x's rival Xenium product.[8] If, as NanoString has alleged, Harvard and 10x committed to license the Asserted Patents non-exclusively, this bait-and-switch is cognizable anti-competitive behavior to dominate the global SST market. FAC ¶ 186.

## CONCLUSION

Plaintiffs have failed to meet their heavy burden of showing that NanoString's federal and state law claims are futile. As such, NanoString's Motion for Leave to Amend should be granted.

---

[8] A true and correct copy of the Press Release is attached hereto as Exhibit A.

Dated: May 23, 2023

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

Christopher Pepe (admitted *pro hac vice*)
Amanda Branch (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Phone: (202) 682-7000
christopher.pepe@weil.com
amanda.branch@weil.com

Eric Hochstadt (admitted *pro hac vice*)
Natalie C. Kennedy (admitted *pro hac vice*)
Yi Zhang (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Phone: (212) 310 8145
natalie.kennedy@weil.com
yi.zhang@weil.com

*Attorneys for Defendant*
*NanoString Technologies, Inc.*

11