IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>*Plaintiffs*<br><br>v.<br><br>NANOSTRING TECHNOLOGIES, INC.,<br><br>*Defendant* | C.A. No. 22-261-MFK |

**INTERESTED PARTY VIZGEN, INC.'S OBJECTIONS TO
NANOSTRING'S MOTIONS IN ADVANCE OF JUNE 2 TELECONFERENCE**

In connection with this Court's Orders of May 10, 2023 (D.I. 128) and May 11, 2023 (D.I. 129), inviting any party to file an objection to NanoString's motions, Vizgen submits its limited objections to NanoString's pending motions.

**A.   The merits of the counterclaims and affirmative defenses related to the NIH grant documents should be assessed in accordance with the more fulsome briefing on Harvard and 10x's motion to dismiss in the 595 case**

In the co-pending case against Vizgen, No. 22-595-MFK (the "595 case"), Vizgen has already filed amended counterclaims and affirmative defenses arising from Harvard's and 10x's long-hidden NIH grant documents, and briefing on Harvard's and 10x's Motion to Dismiss (595 case, D.I. 155, 156) is underway. Briefing will be complete on June 19, 2023. *See* D.I. 124 at 2. It was Vizgen who pursued the FOIA request (over Harvard's objections) that provided the newly-learned facts, and Vizgen who developed the claims and defenses at issue. As such, Vizgen believes it should have an opportunity to be heard on the overlapping issues between its and NanoString's newly-asserted counterclaims and defenses.

1

Harvard's and 10x's actions to conceal its full NIH grant application in which it promised to openly and non-exclusively license the asserted patents—and that the NIH made one of the "Special Terms and Conditions" of funding—has fundamentally altered these cases. It is not hyperbole to say the licensing commitments that Vizgen uncovered in Harvard's grant documents are bombshell revelations. Vizgen is deeply concerned that the antitrust, unfair competition, unclean hands and license claims it developed—that are currently the subject of pending Rule 12 proceedings in Vizgen's 595 case—are being materially prejudiced by Harvard's actions in this 261 case against NanoString in which Harvard is shortcutting the Rule 12 process to gain litigation advantage. Vizgen respectfully requests the Court refrain from addressing the merits of the claims until Vizgen has the opportunity to respond to Harvard's and 10x's Rule 12 motion on June 8, 2023. The following timeline demonstrates the cause of prejudice:

- In 2009, Harvard submitted its grant application, obtaining over $19 million in funding for 2010 through 2015;
- Per federal law, Harvard listed the grant number that funded its research within the patents now being asserted against Vizgen and NanoString;
- Harvard and 10x submitted only a truncated version of the grant to the Patent Office during prosecution of the patents, which did not include Harvard's promise to openly and non-exclusively license the asserted patents;
- Vizgen served its discovery requests to Harvard on October 12, 2022;
- On September 22, 2022, Vizgen filed a FOIA request to obtain the grant documents directly from the government;
- On November 15, 2022, Harvard demanded Vizgen withdraw its FOIA request;

- Only *after* Vizgen told Harvard that it would not withdraw its FOIA request, did Harvard produce the grant documents – but under the highest level of confidentiality;

- Harvard made the deliberate decision *not* to produce the grant documents to NanoString despite NanoString being sued under the same patents as Vizgen;[1] and

- It was the meet and confer process in April 2023 in connection with Vizgen's motion to stay that led to the admission that Harvard had chosen not to produce the grant documents to NanoString.

As described in Vizgen's Motion to Stay (595 case, D.I. 146), its Counterclaims and Affirmative Defenses (595 case, D.I. 138) and in its forthcoming opposition to Harvard's and 10x's motion to dismiss, the grant commitments are clear and enforceable promises to provide non-exclusive licenses for the patents now asserted.  Indeed, the NIH insisted that the commitments be one of the eleven "Special Term and Conditions" of the massive, multi-year grant.  Separate and apart from the contractual commitments to the government—the existence of which is supported by appellate precedent and federal regulations—Harvard's and 10x's subsequent actions lead to claims of unfair competition and monopolization, as well as the patent defense of unclean hands. NanoString, not surprisingly, has adopted the claims and defenses developed by Vizgen.

However, Harvard is now seeking accelerated resolution of the claims on the merits in this 261 case under the guise of opposition to a motion to amend while its motion to dismiss is pending on a normal schedule in the 595 case. This is fundamentally unfair to Vizgen whose initial FOIA request led to the revelation of the commitments and whose pleadings laid the groundwork for the

---

[1] It is primarily NanoString's argument to assert in this 261 case, but Harvard's and 10x's position that the grant documents—referenced in the patents in suit—were not relevant to any document request in that case appears frivolous at best. The documents were in possession of litigation counsel, processed, and loaded onto servers for production.  It was a strategic choice not to produce them to NanoString while simultaneously seeking an injunction in Germany.

3

new defenses.  By concealing the grant documents from NanoString, Harvard caused the timing that led to the motion to amend.  These claims should be addressed on the merits in the 595 case, not on limited briefing on a motion to amend in this trailing case.

**B.       Expedited discovery on the counterclaims and affirmative defenses related to the NIH grant documents is warranted**

With respect to Vizgen's position on NanoString's motion for expedited discovery, Vizgen is generally aligned with ordering Harvard to engage in long-delayed discovery forthwith.  Indeed, Harvard has produced very little discovery.  As described in the parties' Joint Status Report (D.I. 124 at 3-4), in order to expeditiously move this case forward and prepare for potential early summary judgment motions, Vizgen  proposed a date certain of June 30, 2023 for Harvard to produce documents related to the NIH grant application; separate and early depositions of Harvard's principal investigator George Church; and early depositions of Harvard and individuals other than Church involved in the grant and licensing process, and the decisions around disclosure of only a portion of the grant.  Vizgen also proposed a status conference after Harvard provides discovery and after this Court rules on pending Rule 12 motions, at which time Vizgen will request leave to file early summary judgment motions on its license and/or unclean hands defenses.  *Id*.

**C.       A stay of the patent claims or early summary judgment, rather than bifurcation, is appropriate**

With respect to NanoString's motion to bifurcate (D.I. 125), Vizgen respectfully submits that a stay of the patent claims may still be appropriate.  Vizgen is concerned that bifurcation and an accelerated schedule to early trial will jeopardize Vizgen's ability to pursue and fully present its defenses in the first instance.  As such, Vizgen believes its proposal outlined in the Joint Status Report (D.I. 124 at 3-4) is the most efficient way to resolve these issues absent a stay.

Vizgen is cognizant that Harvard's and 10x's cover up of the NIH grant documentation has created time pressure on NanoString in connection with an injunction issued in Germany.  Vizgen

is sympathetic to NanoString's position, especially in light of Harvard's and 10x's flaunting of licensing commitments to the United States government by seeking *ex parte* orders in a foreign country to prevent enforcement in this United States District Court. Vizgen, however, has no insight into the current status or schedule in Germany. Vizgen believes this Court certainly has the power to remedy this situation because 10x and Harvard—the parties pursuing an injunction in Germany—are before this Court in both the 595 and 261 cases. Vizgen, as a separate party and not subject to any decisions of a German judge, ought not be prejudiced by 10x's and Harvard's *ex parte* actions in a separate forum. In particular, as the party that uncovered the hidden evidence that underlies these new issues, Vizgen should be the party to take the lead in developing the claims for motion and trial without prejudice from an ancillary international proceeding in which it plays no role.

Dated: May 24, 2023

*Of Counsel*:

David Bilsker (*pro hac vice*)
Sam Stake (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Kevin Johnson (*pro hac vice*)
Victoria Maroulis (*pro hac vice*)
Andrew Bramhall (*pro hac vice*)
Brian C. Cannon (*pro hac vice pending*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Pilar G. Kraman*
James L. Higgins (No. 5021)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jhiggins@ycst.com
pkraman@ycst.com

*Attorneys for Vizgen, Inc.*

Redwood Shores, California 94065 (650) 801-5000

Angus Chen (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Patrick D. Curran (*pro hac vice*)
Eric D. Wolkoff (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7100