IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>   Plaintiffs,<br><br>  v.<br><br>BRUKER SPATIAL BIOLOGY, INC., BRUKER NANO, INC., AND BRUKER CORP.,<br><br>   Defendants. | C.A. No. 22-261-MFK<br><br>**REDACTED PUBLIC VERSION** |

**PLAINTIFF 10X GENOMICS, INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT REPORT PARAGRAPHS [DI 485]**

OF COUNSEL:

Matthew Powers
Paul Ehrlich
William P. Nelson
Stefani Smith
Robert Gerrity
Li Shen
TENSEGRITY LAW GROUP LLP
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000
10x_Harvard_NSTG_Service@tensegritylawgroup.com

Azra M Hadzimehmedovic
Aaron M. Nathan
Samantha Jameson
Ronald J. Pabis
Kiley White
Joanna R. Schacter
Parshad K. Brahmbhatt
Grace Gretes
TENSEGRITY LAW GROUP LLP
1676 International Dr.
Suite 910

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for 10x Genomics, Inc.*

McLean, VA 22102
Tel: (650) 802-6000
10x_Harvard_NSTG_Service@tensegritylawgroup.com

Marguerite M. Sullivan
Molly M. Barron
Christopher John Brown
Brian Barrows Goodell
Sahdia Khan
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Kelly Fayne
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Dated: February 18, 2025

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

III.    LEGAL STANDARD ................................................................................................... 2

      A.      Infringement Contentions Provide Notice of Infringement Theories and It Is Appropriate for Expert Reports to Provide Additional Detail and Evidence Supporting Those Theories. ................................................................................... 2

      B.      Bruker Bears The "Heavy Burden of Persuasion" to Justify Exclusion of the Quackenbush Report Paragraphs, a Burden that Normally Requires a Showing of Bad Faith or Other Deceptive Conduct. ................................................ 3

      C.      Neither The Law-of-the-Case Doctrine Nor Enforcement of a Court Order Applies to Bruker's New Motion to Exclude Expert Opinions. ............................ 4

IV.     STATEMENT OF FACTS ............................................................................................ 4

V.      ARGUMENT ............................................................................................................... 5

      A.      Plaintiffs Consistently Identified U.S. CosMx Users as Direct Infringers Who Perform Every Step of the Asserted Method Claims in the U.S. ........................... 5

      B.      The Challenged Paragraphs in The Quackenbush Report Support Infringement Theories Properly Disclosed in The Operative ICs. ....................... 7

      C.      Bruker's Brief Does Not Even Attempt to Justify Exclusion of Quackenbush Report Paragraphs 260-263 ................................................................................. 15

      D.      Bruker's Brief Does Not and Cannot Meet Its Burden to Show Bad Faith or Other Deceptive Conduct to Justify the Exclusion of Critical Evidence. ............ 15

VI.     CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
　2017 WL 11517421 (D. Del. Nov. 7, 2017 ........................................................... 3, 7, 14, 15

*Hamilton v. Leavy*,
　322 F.3d 776 (3d Cir. 2003) ................................................................................... 4

*In re City of Philadelphia Litig.*,
　158 F.3d 711 (3d Cir. 1998) ................................................................................... 4

*In re Continental Airlines, Inc.*,
　279 F.3d 226 (3d Cir. 2002) ................................................................................... 4

*In re Paoli R.R. Yard PCB Litig.*,
　35 F.3d 717  (3d Cir. 1994) .................................................................................... 3

*Int'l Union v. Visteon Corp.*,
　2015 WL 4126742 (D. Del. July 9, 2015) .............................................................. 4

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
　2017 WL 658469 (D. Del. Feb. 14, 2017) .............................................................. 3

*Konstantopoulous v. Westvaco Corp.*,
　112 F.3d 710 (3d Cir. 1997) ................................................................................... 15

*Motion Games, LLC v. Nintendo Co.*,
　2015 WL 1774448 (E.D. Tex. Apr. 16, 2015)) ...................................................... 3

*ROY-G-BIV Corp. v. ABB, Ltd.*,
　63 F. Supp. 3d 690 (E.D. Tex. 2014) ..................................................................... 3

*TQ Delta, LLC v. Adtran, Inc.*,
　2021 WL 3633637 (D. Del. Aug. 17, 2021) ................................................ 2, 3, 14, 15

**Other Authorities**

United States District Court for the District of Delaware,
　*Default Standard for Discovery* ............................................................................. 3

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Fact discovery in this case closed on October 23, 2024, and expert discovery is ongoing. Opening expert reports were served on November 8, 2024. D.I. 462. Expert discovery closes on February 28, 2025. D.I. 359. Trial is set for May 15, 2025. *Id.*

## II.      INTRODUCTION AND SUMMARY OF ARGUMENT

1.      The relief that Bruker requests in its Motion to Enforce (D.I. 485, "Motion") is not governed by the December 13, 2024, Order. Striking critical portions of an expert report is an extreme sanction and requires an analysis of both the report in question as well as the operative September 27, 2024, Final Infringement Contentions ("Operative ICs"). Bruker never before requested such relief, and the Court has never assessed this question. *See* Dec. 13, 2024, Hearing Tr. at 14:22-15:2 (noting that the Court was not going to adjudicate the theories in the now-Operative ICs). Despite Bruker never moving to strike portions of Plaintiffs' expert reports, following the December 13, 2024, Order, Plaintiffs reviewed both the November 8, 2024, Quackenbush Report and Davis Report in view of the Operative ICs and the October 23, 2024, stricken Infringement Contentions ("stricken Contentions"). Based on that review, on December 16, 2024, Plaintiffs agreed to retract paragraphs 254 and 258 of the Quackenbush Report for relying on assertions raised only in the stricken Contentions. All remaining challenged portions of Dr. Quackenbush's Report are proper support for infringement theories timely disclosed in the Operative ICs.

2.      The portion of the Quackenbush Report that Bruker is now fixated on details how CosMx users, performing the CosMx workflow, infringe the claims of the Asserted Patents. That has been Plaintiffs' infringement theory all along. And although Bruker asks for sweeping relief striking all of paragraphs 246-271 of the Report, Bruker's Motion raises no specific arguments for striking paragraphs 260-263. *See* D.I. 486 at 4-5, 7. As Plaintiffs have already retracted

1

paragraphs 254 and 258, the dispute seems to focus only on paragraphs 246-253, 255-257, 259, and 264-271 based on the paragraphs actually addressed in Bruker's Motion. Those paragraphs properly provide expert opinion supporting the infringement theories timely set forth in the Operative ICs. To the extent this Court chooses to also address paragraphs 260-263 (the report paragraphs for which Bruker did not elucidate a specific concern in its Motion), those paragraphs also properly provide expert opinion supporting the infringement theories timely set forth in the Operative ICs. Bruker's Brief in support of its Motion (D.I. 486), which relies on the law of the case doctrine rather than addressing the relevant content of the Operative ICs and comparing their content to the challenged report paragraphs, does not support striking any challenged paragraph in the Quackenbush Report.

## III.    LEGAL STANDARD

A decision on Bruker's new Motion is governed and guided by the caselaw surrounding sufficiency of timely infringement contentions, the appropriate scope for expert discovery to expand on and further support timely contentions, and the heavy burden Bruker must meet to justify the striking of expert opinions. Regardless of how Bruker may choose to title its new Motion, this is not a dispute regarding law of the case or the enforcement of a Court order.

### A.    Infringement Contentions Provide Notice of Infringement Theories and It Is Appropriate for Expert Reports to Provide Additional Detail and Evidence Supporting Those Theories.

A Plaintiff may appropriately "use[] the opening expert reports to expand on [its] infringement theory, as it is entitled to do." *TQ Delta, LLC v. Adtran, Inc.*, 2021 WL 3633637, at *2 (D. Del. Aug. 17, 2021). This includes providing additional support, evidence, and citations, so long as they are "in support of broad theories disclosed in [the] infringement contentions." *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2017 WL 11517421, at *2 (D. Del. Nov. 7,

2017); *see also id.* at *3 ("It is reasonable for expert reports to expand on, or amplify infringement contentions in reaching the expert's conclusions.").

Infringement contentions "serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *2 (D. Del. Feb. 14, 2017) (quoting *Motion Games, LLC v. Nintendo Co.*, 2015 WL 1774448, at *2 (E.D. Tex. Apr. 16, 2015)). "Infringement contentions are treated as initial disclosures under Federal Rule of Civil Procedure 26(a)." *TQ Delta*, 2021 WL 3633637, at *1 (citing United States District Court for the District of Delaware, *Default Standard for Discovery* § 4).

"The scope of infringement contentions and expert reports are not, however, coextensive." *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014). "Infringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case,' [] whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them. Fed. R. Civ. P. 26(a)(2)(B)." *Id.* (internal citation omitted).

   **B.     Bruker Bears The "Heavy Burden of Persuasion" to Justify Exclusion of the Quackenbush Report Paragraphs, a Burden that Normally Requires a Showing of Bad Faith or Other Deceptive Conduct.**

"The law imposes a heavy burden of persuasion on the party that seeks to exclude or strike significant portions of the opposing party's expert report. Cases in this Court, the Third Circuit, and in other Federal Courts all resist excluding expert reports, absent a showing of bad faith or other deceptive conduct that puts the moving party under extreme prejudice if exclusion is not granted." *Acceleration Bay*, 2017 WL 11517421, at *2; *see also, e.g., In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (such exclusion is "not normally to be imposed

3

absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence").

### C.    Neither The Law-of-the-Case Doctrine Nor Enforcement of a Court Order Applies to Bruker's New Motion to Exclude Expert Opinions.

Because Bruker never moved to strike any paragraphs of the Quackenbush Report as purportedly disclosing expert opinions beyond the contentions in Plaintiffs' September Operative ICs—and thus the Court never decided whether those Operative ICs sufficiently disclose the contentions that Dr. Quackenbush's expert opinions support—this dispute is not a dispute about law-of-the-case or the enforcement of an order. The cases Bruker cites do not support its requested relief. *See*, *e.g.*, *In re City of Philadelphia Litig.*, 158 F.3d 711, 717-718 (3d Cir. 1998) (discussing the law of the case doctrine and noting that it "acts to preclude review of only those legal issues that the court in a prior appeal actually decided"); *Hamilton v. Leavy*, 322 F.3d 776, 786 (3d Cir. 2003) (discussing application of law-of-the-case doctrine where a previous Third Circuit appeal decided an issue in a later district court proceeding); *In re Continental Airlines, Inc.*, 279 F.3d 226, 233 (3d Cir. 2002) (previous appellate decisions bind relitigation for "unambiguously identified, properly presented and ably and vigorously argued" issues); *Int'l Union v. Visteon Corp.*, 2015 WL 4126742, at *4 (D. Del. July 9, 2015) (declining to apply the law-of-the-case doctrine to a claim of issue preclusion, which, though related to a fully litigated claim preclusion issue, was not squarely addressed by previous district and appellate court decisions).

## IV.    STATEMENT OF FACTS

Plaintiffs served Infringement Contentions on September 27, 2024 ("Operative ICs") and there is no dispute that those contentions were timely served. D.I. 486 [Bruker Br.] at 1; D.I. 487-1 through 487-5 (Exs. A-E to Operative ICs); **Ex. 1** (Plaintiffs' September 27, 2024,

Infringement Contentions Cover Document). Those Operative ICs were not the subject of Bruker's prior motion to strike Plaintiffs' subsequent October 23, 2024, amended infringement contentions. D.I. 473. Fact discovery in this case closed on October 23, 2024. D.I. 359. Dr. Quackenbush's expert report that is now the subject of Bruker's Motion was timely served on November 8, 2024. Bruker moved on December 6, 2024, to strike Plaintiffs October 2024 infringement contentions and this Court granted that Motion on December 13, 2024. D.I. 473; December 13, 2024, Minute Order. Plaintiffs agreed to withdraw ¶¶ 254, 258 of Dr. Quackenbush's Report following this Court's Order striking the October 2024 contentions. D.I. 487-13 (Ex. M) at 1-2.

## V.    ARGUMENT

### A.    Plaintiffs Consistently Identified U.S. CosMx Users as Direct Infringers Who Perform Every Step of the Asserted Method Claims in the U.S.

Throughout this case, Plaintiffs set forth an infringement theory based on CosMx users performing the CosMx workflow. Section IV of the Operative ICs ("ACTS OF DIRECT INFRINGEMENT") provides notice of Plaintiffs' contention and infringement theory that NanoString's customers using the CosMx workflow in the U.S. directly infringe the Asserted Patents by performing each element of the claimed methods in the U.S. **Ex. 1**. *See*, *e.g.*, *id.* at 8 (describing the direct infringement theory as being based on ▮▮▮▮▮▮▮▮▮▮▮▮); *see also id.* at 8-9 (citing as example evidence of Bruker's customers' acts as direct infringers the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Bruker does not address and did not even provide this cover document from Plaintiffs' Operative ICs in its Brief. *See* D.I. 486.

The Second Amended Complaint was incorporated by reference into Plaintiffs' Operative ICs (*see* **Ex. 1** (Operative ICs) at 8)) and further details how CosMx users infringe the asserted

method patents. For example, in the March 1, 2023, Second Amended Complaint, Plaintiffs asserted that "NanoString's CosMx SMI platform customers, collaborators, and partners, including for example researchers at Wake Forest University, have practiced and continue to practice one or more claims of the Asserted Patents by using the CosMx SMI workflow and with NanoString's knowledge." D.I. 92, ¶ 19. For every asserted method patent, the Second Amended Complaint further sets forth how, *e.g.*, "[o]n information and belief, the first direct infringement of the 639 Patent by NanoString's customers, end users, partners, or collaborators occurred before January 3, 2023, the date of NanoString's announcement that a team of researchers at Wake Forest had used the Accused Instrumentalities." *Id.* at ¶ 38; *see also id.*, ¶¶ 46 (737 Patent), 54 (051 Patent), 62 (052 Patent), 70 (054 Patent).

The claim charts included in the Operative ICs then set forth how the CosMx users performing the CosMx workflow infringe each and every step of the asserted method claims, including through the use of, *e.g.*, spotFiles, spatial RNA profiling, Target Matching Results, cell segmentation, and publication of experimental results as addressed in detail in the next section of this Opposition. *See* § V.B, *below*.

As Bruker's Motion notes, in addition to providing Plaintiffs' contentions and infringement theories regarding performance of the claim elements in the U.S., those claim charts also included a contention disputing the accuracy of Bruker's contention that certain steps when performed by AtoMx (rather than by the user) were performed outside the U.S., stating:

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ D.I. 487-4, Ex. D (737 patent) at 29.

Bruker's motion selectively focuses on only that last contention, ignoring how the claim charts

and Operative ICs as a whole provide notice of Plaintiffs' infringement theory that CosMx users located in the U.S. following the CosMx workflow are the direct infringers of each step of the claimed methods (regardless of where AtoMx servers may be located). Bruker was thus properly put on notice of Plaintiffs' infringement theories that Dr. Quackenbush provides expert support for in the challenged paragraphs of his expert report.

Nevertheless, Bruker seeks to effectively remove all support for those timely disclosed infringement theories from the November 8, 2024, expert report of John Quackenbush. To support its request, Bruker enlarges the scope of the Order striking the October 23, 2024, amended Infringement Contentions, declaring that the Order included a sweeping order to delete paragraphs of an expert report that Bruker never put before this Court for review and based on alleged insufficiency of the Operative ICs which likewise were never put before this Court to compare to the stricken October contentions. Bruker then relies extensively on cases involving the inapposite law-of-the-case doctrine to assert that the Order striking the October 23, 2024, amended Infringement Contentions retroactively disallowed Plaintiffs from offering a report that discusses and provides detail on the assertions of the Operative ICs.  It should not be permitted to do so.

B.    **The Challenged Paragraphs in The Quackenbush Report Support Infringement Theories Properly Disclosed in The Operative ICs.**

Each disputed paragraph[1] in the Quackenbush Report provides expert opinion "in support of broad theories disclosed in [the] infringement contentions." *Acceleration Bay*, 2017 WL 11517421, at *2. And most also rely on documents that were specifically disclosed in the Operative ICs. To start, Bruker targets paragraphs 246, 264, 270 and 271 as expressing a

---

[1] Plaintiffs already agreed to withdraw paragraphs 254 and 258 of the Quackenbush Report after this Court's prior Order. D.I. 487-13, Ex. M at 1-2.

"sweeping new theor[y]" that "using CosMx devices somehow control[s] automated processes occurring on AtoMx servers located in Canada." D.I. 486 at 4. Bruker is wrong. Paragraph 246 of the Quackenbush Report simply asserts that ████████████████████████████ ██████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ **Ex. 2** (Quackenbush Report excerpt, ¶¶246-271), ¶ 246. That is not a new theory.

As detailed above, the theory that CosMx users in the U.S. infringe the asserted patents, and as such, perform each step of the method claims, is the main direct infringement theory described in the Operative ICs. *See* **Ex. 1** (Operative ICs) at 8-9. The Operative ICs further disclose Plaintiffs' theories for how ███████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████ *See* D.I. 487-4, Ex. D at 17-27. There, the Operative ICs include, for example, citations to the ███████████████████████████████████ sections ██████████████████████████████████████████████████████████████████████ ███████████████████████ which explain how the user's configuration of the CosMx instrument in the U.S., including the inputting of the user's AtoMx account credentials, control and cause to be performed all of the steps of the CosMx automated workflow. *See*, *e.g.*, *id.* at 27.

The Operative ICs further include citations to ████████████████████████ █████████████████████ that has nothing to do with analysis on AtoMx. *See* D.I. 487-4, Ex. D at 3, 7, 9, 11-13, 17-21, 30, 34-38, 42-46, 48, 49, 54, 57, 61-63, 65-67, 71-75, 86. Thus, when Bruker asserts "Plaintiffs' Operative Contentions describe no theory of infringement that relies on users processing their own data outside of AtoMx," (D.I. 486 at 7), it is quite clearly wrong. The most heavily cited evidence in the Operative ICs describes users processing their own data

outside of AtoMx. The Operative ICs thus make clear an infringement theory that when the *user* gets the input and output data for detecting and using a temporal order of signal signatures, it is the *user* that performs those steps in the U.S. Dr. Quackenbush phrased the assertion in his own words, but the assertion is the same. Bruker was on notice of these theories.

In paragraph 264, Dr. Quackenbush describes how ███████████████████ ████████████████████████████████████████ and use them ███████████ ██████████████████████ **Ex. 2**, ¶ 264. The same is presented in the Operative ICs, which address how when CosMx users perform the CosMx workflow, they infringe the claim limitation "using said temporal order of signal signatures to identify said analyte in said cell or tissue sample," (*see* D.I. 487-4, Ex. D at 17) including by citing and showing specific portions of an example NanoString document describing the data outputs from the CosMx instrument including ██████████████████████████████████ that are provided for use by the user to identify analytes in the cell or tissue sample using the temporal order of signal signatures (*id*. at 26-27). Again, Dr. Quackenbush's report similarly describes his expert opinions and explanations regarding the use of the █████████████████ ████████████and other data outputs, and those opinions support the same infringement theories presented in the Operative ICs.

In paragraph 270 of his report, Dr. Quackenbush describes how the ███████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ **Ex. 2**, ¶ 270. The CosMx user is accused of doing the same in the Operative ICs. *See*, *e.g.*, D.I. 487-4, Ex. D at 6-9 (describing how the CosMX workflow involves ████████████████████████████████████████████

████████, while citing to NanoString's ████████████████████████████████████ documents).

In paragraph 271, Dr. Quackenbush describes how the user loads a prepared slide onto the CosMx instrument to determine a temporal order of signal signatures, explaining that: ██████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ **Ex. 2**, ¶ 271. The same is detailed in the Operative ICs in addressing the claim limitation "detecting a temporal order of signal signatures in said cell or tissue sample, wherein said temporal order of signal signatures is associated with said one or more pre-determined subsequences." *See, e.g.*, D.I. 487-4, Ex. D at 10-11 (describing how the prepared slide is loaded onto the SMI instrument for "████████████████████████████," to produce ████████ ████████████████████████████████████████████"), 14 (explaining how the ██████████████████████████████████████████████████████████████ ████████████████████).

The remaining paragraphs that Bruker challenges similarly support the theories outlined in the Operative ICs. For example, in paragraphs 247-250, Dr. Quackenbush explains how ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ **Ex. 2**, ¶¶ 247, 248, 249. He continues in paragraphs 260-263, addressing how ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

10

███████████████████████████████████████████████ **Ex. 2**, ¶ 260. Dr. Quackenbush concludes stating that it is his opinion "█████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████" **Ex. 2**, ¶ 263. The same is presented in the Operative ICs. *See*, *e.g.*, D.I. 487-4, Ex. D at 17 (asserting that the CosMx workflow "uses the detected temporal order of signal signatures to identify the analyte in the cell or tissue sample" and quoting ████████████████████ ████████████████████████████████████████████████ ██████████████████████), 18 (quoting ███████████████████████ ████████████████████████████████████████████████ ██████████████). 

In paragraph 251, Dr. Quackenbush describes how ████████████████████ ██████████████████████████████ along with cell segmentation data, "which is used by the CosMx user to place RNA analytes within the tissue sample so as to reveal the underlying biology." **Ex. 2**, ¶ 251. He supports that description by citing to a document titled ██████████ ████████████████ (NANO10XH00009305). *Id.* In paragraph 259, Dr. Quackenbush further discusses how performing cell segmentation is involved in identifying analytes in locations. *Id.* at ¶ 259. The Operative ICs similarly address how CosMx users infringe the "using said temporal order of signal signatures to identify said analyte in said cell or tissue sample" limitation, relying on a NanoString document that outlines how ██████████ are ██████████ ████████████ along with ██████████████████ including ████████████████ which are all created on the CosMx instrument and provided to the U.S. user of the CosMx instrument. D.I. 487-4, Ex. D at 17, 27. That example NanoString document also describes that those files

from the CosMx instrument are sent to AtoMx as ████████ for ███████████████████ D.I. 487-4, Ex. D at 17, 27. The ████████ from AtoMx that are also provided to the user in the U.S. include the █████████████████ *Id.* at 27. The example NanoString document highlighted in the Operative ICs is the same █████████████████████ [NANO10XH00009305-9356]" document that Dr. Quackenbush cites in his own analysis. The Operative ICs also further identify NanoString documents describing the cell segmentation options that NanoString makes available to CosMx end users, including, *e.g.,* █████████████████████████

██████████████████████. *See, e.g.,* D.I. 487-4, Ex. D at 18, 21, 38, 72. Thus, the theories described by Dr. Quackenbush in paragraphs 251 and 259 support the same infringement theories presented in the Operative ICs.

    In paragraphs 252 and 253, Dr. Quackenbush discusses how "███████████████████

█████████████████████████, including what Bruker refers to as decoding.

████████████████████████████████████████

██████████████████ **Ex. 2**, ¶¶ 252-53 (citing to and providing a NanoString document from █████████████████ at 9331). The Operative ICs cite the same ████████ at 9331, and provide the same NanoString document, which is a graphic showing ███████████████████████████████████████

██████████████████ (which are what identify analytes at locations), and other outputs on to the user for use by the user. D.I. 487-4, Ex. D at 26-27.

    In paragraphs 255-257 Dr. Quackenbush describes how CosMx instruction manuals guide users to "enable them to identify analytes at locations," through the use of the ███████████

████████ data. **Ex. 2**, ¶ 255. As explained by Dr. Quackenbush, CosMx users "then process their data in the United States to understand the underlying biology." **Ex. 2**, ¶ 256. He continues,

describing how NanoString provides tutorials on how to use CosMx data ███████████ ███████████████████████████████████████████████████████████████████████████████ ████████████ *Id.* at ¶ 257. The Operative ICs address the same workflow and data processing in outlining how CosMx users "us[e] said temporal order of signal signatures to identify said analyte in said cell or tissue sample." D.I. 487-4, Ex. D at 17. For example, the Operative ICs show CosMx imaging allowing for █████████████████████████████████████████ ████████████████████████████████████ to identify analytes of interest, all while citing to the same ████████ ████████ document that Dr. Quackenbush cites in his analysis—NANO10XH00008018. D.I. 487-4, Ex. D at 24-25. The Operative ICs further identify ███████ ████████████████ and cite NanoString's own user guide materials and product specifications that make clear that it is an end user's configuration and initiation of a CosMx analysis run in the U.S. that causes all steps of the CosMx workflow to be performed, including, *e.g.*, automated uploading of data from the CosMx instrument in the U.S. to AtoMx and the subsequent returning of that analyzed data back to the user in the U.S. *Id.* at 27-28. Again, Dr. Quackenbush's report similarly describes his expert opinions and explanation regarding ████████████████████ ████████████████ by users of the CosMx workflow, as guided by NanoString's own Data Analysis manual and user guides, but those opinions support the same infringement theories presented in the Operative ICs.

In paragraphs 265-269, Dr. Quackenbush details how CosMx users identify analytes when they perform the entire CosMx workflow, which includes the █████████████████████ ██████████████████████████████████ cited in the Operative ICs to address the same claim limitation. *See*, *e.g.*, D.I. 487-4, Ex. D at 38 (citing the same ████████████████████████ ████████████████████████████ outside of AtoMx). These paragraphs also describe the



█████████████████████████████████, which as discussed above, are also expressly included in the Operative ICs.

Bruker also asserts that the Quackenbush paragraphs that discuss "publication of experimental results" (identified by Bruker as ¶¶ 255-256, 265-267, and 270-271) must be struck because they contain a "new theory" not advanced in the Operative ICs. *See* D.I. 486 at 5. However, as discussed above, the Operative ICs expressly cite NanoString's own publication tracker as evidence of CosMx users' performance of every step of the claimed methods (that is, their acts of direct infringement) and both the Second Amended Complaint and the claim charts in the Operative ICs cite example publications. *See* **Ex. 1** (Operative ICs) at 8; § V.A, *above*. The Operative ICs thus also put Bruker on notice of this theory.

Bruker's complaint that "detailed theories and arguments are not described in Plaintiffs' Operative Contentions" (D.I. 486 at 5) is wrong in fact as described in the preceding paragraphs. Bruker's argument also is not a proper rationale for striking portions of an expert report. Courts of this District have held that even where arguments on a broad infringement theory "were not completely fleshed out, that was not necessary at this stage"—meaning at the stage of serving final infringement contentions. *TQ Delta*, 2021 WL 3633637, at *2. Here, Plaintiffs timely disclosed their theory regarding CosMx users performing each step of the claimed methods, and Dr. Quackenbush's report properly provides additional support and detail for that contention. Experts may reasonably elaborate on a party's contentions and experts are not precluded from identifying additional technical details to support their opinions. *Acceleration Bay*, 2017 WL 11517421, at *2-3. That includes providing additional support and additional citations, so long as they are "in support of broad theories disclosed in [the] infringement contentions." *Id.*, at *2. Because "Plaintiff did not raise this infringement theory for the first time in its opening expert

reports, but rather, used the opening expert reports to expand on this infringement theory, as it is entitled to do," (*TQ Delta*, 2021 WL 3633637, at *2) Bruker's Motion should be denied.

### C. Bruker's Brief Does Not Even Attempt to Justify Exclusion of Quackenbush Report Paragraphs 260-263.

Bruker's Motion does not even attempt to assert any specific rationale for striking paragraphs 260-263. *See* D.I. 486 at 4-5, 7. Plaintiffs explain above how each paragraph challenged by Bruker in its Motion (including these paragraphs) provide expert support for infringement theories that were timely disclosed in the Operative ICs.

### D. Bruker's Brief Does Not and Cannot Meet Its Burden to Show Bad Faith or Other Deceptive Conduct to Justify the Exclusion of Critical Evidence.

The burden for striking significant portions of an expert report, which Bruker did not move to do previously, has not, and cannot be met here. "The law imposes a heavy burden of persuasion on the party that seeks to exclude or strike significant portions of the opposing party's expert report. Cases in this Court, the Third Circuit, and in other Federal Courts all resist excluding expert reports, absent a showing of bad faith or other deceptive conduct that puts the moving party under extreme prejudice if exclusion is not granted." *Acceleration Bay*, 2017 WL 11517421, at *2. "The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *TQ Delta*, 2021 WL 3633637, at *1 (citing *Konstantopoulous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).

Here, there has been no showing of bad faith or other deceptive conduct. Indeed, Bruker's brief supporting its Motion does not allege as much, let alone sufficiently establish it. And there is no dispute that the November 8, 2024, Quackenbush Report was prepared and timely served before Bruker even moved to strike the amended October 23, 2024, contentions. And although the Court granted Bruker's motion to strike the amended October 23, 2024,

contentions, in so doing, this Court found no bad faith "here at all." *See* December 13, 2024, Hearing Tr. at 17:11 ("I don't think there's any bad faith here at all").

## VI.    CONCLUSION

For the reasons discussed above, Bruker's Motion should be DENIED.

Respectfully Submitted,

*Of Counsel:*

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
William P. Nelson
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Azra M. Hadzimehmedovic
Aaron M. Nathan
Samantha Jameson
Ronald J. Pabis
Kiley White
Joanna R. Schacter
Parshad K. Brahmbhatt
Grace Gretes
1676 International Dr.
Suite 910
McLean, VA 22102
Tel: (650) 802-6000

Marguerite M. Sullivan
Molly M. Barron
Christopher John Brown
Brian Barrows Goodell
Sahdia Khan
LATHAM & WATKINS LLP

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Jason J. Rawnsley*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

*Attorneys for 10x Genomics, Inc.*

16

555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Kelly Fayne
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

10x_Harvard_NSTG_Service@tensegritylawgroup.com

Dated: February 18, 2025

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2025, copies of the foregoing were

served upon the following parties as indicated below:

| | |
|---|---|
| Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>FARNAN LLP<br>919 N. Market St., 12th Floor<br>Wilmington, DE 19801<br>Tel: (302) 777-0300<br>Fax: (302) 777-0301<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>Edward R. Reines<br>Derek C. Walter<br>Karnik F. Hajjar<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, California 94065<br>Telephone: 650-802-3000<br>Nanostring.10X@weil.com<br><br>Amanda Branch<br>Christopher Pepe<br>Kristin Sanford<br>Anne Corbett<br>John E. Scribner<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Telephone: (202) 682-7000<br>Nanostring.10X@weil.com<br><br>Eric S. Hochstadt<br>Natalie C. Kennedy<br>Yi Zhang<br>Spencer Talbot<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Nanostring.10X@weil.com<br><br>Courtland L. Reichman<br>Savannah H. Carnes | **Via E-mail**<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br>Nanostring.10X@weil.com<br>RJ_Bruker-10X@reichmanjorgensen.com |

| | |
|---|---|
| REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>100 Marine Parkway, Suite 300<br>Redwood Shores, California 94065<br>Telephone: (650) 623-1401<br>Fax: (650) 623-1449<br>RJ_Bruker-10X@reichmanjorgensen.com<br><br>Sarah Jorgensen<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>1201 West Peachtree Street, Suite 2300<br>Atlanta, GA 30309<br>Telephone: (202) 894-7310<br>RJ_Bruker-10X@reichmanjorgensen.com<br><br>Christine E. Lehman<br>Adam Adler<br>REICHMAN JORGENSEN LEHMAN & FELDBERG LLP<br>1909 K St, NW<br>Suite 800<br>Washington, DC 20006<br>Telephone: (202) 894-7310<br>RJ_Bruker-10X@reichmanjorgensen.com<br><br>**_Counsel for Bruker Spatial Biology, Inc., Bruker Nano, Inc., and Bruker Corp._** | |
| Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>(302) 888-6800<br>Kdorsney@morrisjames.com<br>Chitch@morrisjames.com<br><br>Geoffrey M. Raux, Esq.<br>Ruben J. Rodrigues, Esq.<br>Michael J. Tuteur, Esq.<br>Lea Gulotta James, Esq.<br>Amani S. Kmeid, Esq.<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue, Suite 2500<br>Boston, MA 02199 | **Via E-mail**<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com<br>BOST-F-10Xv.Nanostring@foley.com |

19

(617) 502-3284
(617) 502-3228
BOST-F-10Xv.Nanostring@foley.com

Sarah E. Rieger, Esq.
Kate E. Gehl, Esq
Ian T. Hampton, Esq.
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 319-7101
BOST-F-10Xv.Nanostring@foley.com

Jarren N. Ginsburg, Esq.
Alan D. Rutenberg, Esq.
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 295-4071
BOST-F-10Xv.Nanostring@foley.com

Andrew M. Gross, Esq.
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
(202) 832-4532
BOST-F-10Xv.Nanostring@foley.com

**_Attorneys for Plaintiff President and Fellows of Harvard College_**

_/s/ Alexandra M. Ewing_
Alexandra M. Ewing (#6407)